## JOHN TORREY *v.* CHESTER BAXTER.

A promissory note of the debtor, or of a third person with the guaranty of the debtor, given in settlement of a pre-existing account, will be considered as payment, unless such note prove unproductive without the fault of the creditor.

If such note, without the fault of the creditor, prove unavailable, he may resort to his original demand.

Where the note of a third person was, during the existence of a partnership, passed by the firm to one of its creditors, in settlement of an existing account, and the note could not be enforced against the maker, in consequence of a contract made by the firm with such maker, it was held that the creditor might resort to his original demand.

The members of a dissolved partnership, although they have no authority to create new obligations, or to vary the character of former ones, against the firm, may nevertheless pay any debt due from the firm, or receive back a promissory note, which they have wrongfully put in circulation, and bind the other partners by such act.

ASSUMPSIT, against the defendant and George Throop, late partners under the firm of Baxter & Throop, in four counts.

The first count was upon a promissory note, dated June 16, 1838, for $187.64, payable on demand and interest.

The other counts were for money had and received, money paid, laid out and expended, and goods sold and delivered.

Plea, non assumpsit, and issue to the country.

Throop having died after the commencement of the suit, the trial proceeded against Baxter alone.

On the trial in the county court, the plaintiff introduced testimony tending to prove that for several years previous to

March, 1838, the defendants were partners in trade and purchased produce of the plaintiff, and in settlement of his account they sold to him a note payable to them, signed by John Peake, on the back of which they wrote the following guaranty: "We guaranty the payment of this note and are to be holden till paid," and signed the partnership name thereto; that in March, 1838, said copartnership was dissolved; that in June afterwards, Throop applied to the plaintiff to procure the note against Peake, that he might deliver it to Peake in part payment of a note against said Baxter&Throop, which Peake had purchased of one Parker, Throop having, the autumn before, for the firm of Baxter & Throop, agreed with Peake so to do. The plaintiff delivered the note against Peake to Throop and took of him therefor the note declared upon in the first count in the declaration, which was signed thus, " for the firm of Baxter & Throop, George Throop."

The defendant requested the court to charge the jury that, on this testimony, the plaintiff was not entitled to recover. But the court instructed the jury that if they found the facts proved which the testimony tended to prove, then their verdict should be for the plaintiff.

The jury returned a verdict for the plaintiff, and the defendant excepted to the charge of the court.

*Marsh* and *Tracy*, for defendant.

1. The plaintiff cannot recover on the first count, as the note was given after the dissolution of the partnership. One partner cannot bind the firm, after the dissolution, by any new contract; nor can he do any act separately by which a promise in law can arise so as to create a new liability to which the partners were not responsible before. *Abel et. al.* v. *Sutton,* 3 Esp. Cas. 109. *Lansing* v. *Gaines & Ten Eyck,* 2 Johns. 304. 1 Sw. Dig. 350.

2. The second count is for money had and received. There is nothing in the case to show that any money passed between the parties, therefore there can be no recovery under this count.

3. Nor can the plaintiff recover under the third count. The transaction between the plaintiff and Throop, after the dissolution, amounted to a repurchase of Peake's note by Throop. By such purchase Throop could not bind the de-

WINDSOR,
February,
1841.

Torrey
. v.
Baxter.

fendant. He could not even borrow money to pay a partnership debt, and bind the partnership for the repayment, for the reason that one partner cannot create a new liability against the partnership after its dissolution. Swift's Dig. 351. 3 Johns. 536. 9 Cowen, 438. 1 Pet. Rep. 370, 373.

We contend that no new cause of action can be created by one partner against the others, after a dissolution, unless a new authority is given for that purpose. And it is immaterial what the consideration may be which is to raise such cause of action, whether it be a supposed pre-existing debt of the partnership, or any auxiliary consideration which might prove beneficial to the partners. In neither case would they be bound unless they adopted the transaction. *Kilgour* v. *Finlyson et al.* 1 H. Bl. 155.

4. The defendant insists that the plaintiff cannot recover under the fourth count; for goods sold and delivered. The note against Peake was delivered, indorsed and received in payment of the produce and operates as a discharge of plaintiff's claim for produce. *Hutchins* v. *Olcott*, 4 Vt. R. 549. *Wiseman et al.* v. *Lyman*, 7 Mass. 286. *Arnold* v. *Camp*, 12 Johns. 409. *Shirley* v. *Mandeville*, 6 Cranch, 264.

*J. Converse*, for plaintiff.

That we can recover on some of the counts in the declaration, I believe will not be questioned. The note itself is evidence of an indebtedness on the part of the firm. It is a confession, at least, by a partner that the firm is indebted in that amount to plaintiff. It is tantamount to stating an account by one partner after dissolution, which is clearly admissible in this state. We are aware there has been a course of decisions to the contrary in New-York, originating with the case of *Hackley* v. *Patrick et al.* 2 Johns. R. 536, which was a *per curiam* case, and but superficially considered. It is believed these cases are opposed to the whole current of authorities, both in England and in this country. *Wood* v. *Braddick*, 1 Taunt. 104. Sw. Dig. 761. Ch. on Bills, 64. In all the cases the doctrine is recognized, that one partner, after dissolution of the partnership, may, by concession, take the case out of the statute of limitations as to all the partners, although the party making the concession has received his discharge as a bankrupt. Call on Part. 233, and notes.

But defendants were indebted before the dissolution, which indebtedness has never been satisfied ; the present being only a modification of that same indebtedness. 5 B. & C. 196. Call on Part. 329, 330, 334, 325, and notes, 626. 17 Johns. 340.

If so, then there can be no question about the liability of Baxter, even though the plaintiff had agreed to rely on the individual responsibility of the other partner, unless there be some new and sufficient consideration for that new agreement. There is no such agreement in this case. The plaintiff never relied upon the resposibility of Throop.

1. The firm were indebted to plaintiff for produce before the dissolution. But if the claim for produce was extinguished, it became so by means of the Peake note, for the payment of which the firm became liable by their guaranty. There continued, then, a subsisting liability against the firm. Call on Part. 271.

2. The firm, by their acting partner, Throop, made a contract with Peake to pay the note then in the hands of Torrey, and the same shou d be allowed the firm on the Parker note, then owned by Peake. This is to be regarded in the same light as though Peake, at that time, put so much money into defendants' hands to be paid over to Torrey in discharge of his note in the hands of Torrey. It was setting apart so much of Peake's money in the hands of defendants as was necessary to pay that note. But viewed in whatever light it is capable of, it must, as we conceive, be acknowledged that that was a contract for the benefit of Torrey, which he could enforce by an action for money had and received. *Dearborn* v. *Parks*, 5 Greenleaf's R. 81. *Felton* v. *Dickerson*, 10 Mass. R. 287. *Crompton* v. *Ballard*, 10 Vt. R. 251. 1 Chit. Pl. 341. 1 B. & P. 101, note b.

3. If, during the continuance of the partnership, the firm, by their acting partner, had come to plaintiff and procured the Peake note in pursuance of his contract with Peake, and the same was applied upon the Parker note against defendants,whether they gave plaintiff a company note for the same, as in this case, or whether they verbally agreed that they would pay him at some future time, or whether it rested merely in an implied agreement to pay ; could there be any doubt of the liability of the firm ? The fact that the agreement with

Peake was not consumated till after the dissolution, cannot vary the liabilities of any of the partners. Call on Part. 313, and note.

4. It is clear that the defendants have got a sum of money which by the *ties of natural justice* they should pay to plaintiff. The law then implies a debt as against all. 2 Burr. 1008, 1012. 1 Ch. Pl. 341.

5. Plaintiff has paid money for defendant's benefit and should be reimbursed. To deny him what he asks, would be to deny him clear and obvious justice.

The opinion of the court was delivered by

REDFIELD, J.—In the present case it is very obvious, that, in moral equity and good conscience, the plaintiff has a just claim upon the defendant for the payment of his original debt against the late firm of Baxter & Throop. This debt is admitted to have been a just debt against the firm, and it is apparent it has never been realized by the plaintiff, or paid by the firm. This action then should lie, unless there is some inflexible rule of law, which interposes itself between the court and the justice of the case. That does not often happen. It is the boast of the law that its principles, if properly applied, if they fail of producing perfect justice, will seldom, or never, induce absolute injustice.

1. The note of Peake was, by the defendants, before the dissolution of the partnership, *sold to the plaintiff in settlement of his account.* Here was no absolute agreement to take it in payment in all events, and at all hazard. It is not then necessarily payment. It is, at most, payment for the time, or conditionally, i. e. if it prove productive. If plaintiff used proper diligence and failed to collect it, he might return it and sue upon his original demand. *Brown* v. *Kewley*, 2 B. & P. 518. *Davidson* v. *Bridgeport*, 8 Conn. 472. *Bill* v. *Porter*, 9 Conn. 23. If the plaintiff had put the note in circulation he could not recover upon his original demand. *Harris* v. *Johnston*, 3 Cranch, 318. So too if he had been guilty of laches, *Camidge* v. *Allenby*, 6 B. & C. 373, 13 E. C. L. 201. So also if the note had been agreed to be received in absolute payment. *Shirley* v. *Mandeville*, 6 Cranch, 253. Where the creditor accepts either the promissory note of his debtor or of a third person in settle-

ment of a previously unsettled matter of account or dealing between them, this, *prima facie*, is payment. If it be the prommissory note of the debtor, there will be little necessity of ever resorting to the original cause of action. But if the note is by mistake defective, so that no recovery can be had upon it, I apprehend the creditor may always resort to his original demand. So, too, if he accept the note or bill of a third person, which prove unavailable, without his fault. Hence we see no difficulty in permitting the plaintiff in the present case to recover upon his original demand.

2. But we think the special circumstances of this case fully justify a recovery on the ground of virtual fraud, or at least, mistake, on the part of the defendant.

At the time the plaintiff took the note against Peake in settlement of his own account, he took also the unlimited guaranty of the firm for its payment, in case the maker failed to pay it. He did, then, still hold the firm liable to him upon his original demand in one sense. If Peake failed to pay it, they were still to pay it. Peake did fail to pay it, in consequence of a contract made with the firm to pay his debt in another mode. If this contract was made before the sale of Peake's note to plaintiff, and was known to the firm at the time of the sale, it was a gross fraud upon the plaintiff. If it was made subsequently and with the recollection that plaintiff held the note, it will be much the same. But if made either before or after the sale (and which does not appear, nor is it important, as it was made during the existence of the partnership) and without recollecting the sale to the plaintiff, it was still a mistake, which operated to defeat plaintiff's claim upon Peake, and left him no other alternative, but to pursue his original claim or his guaranty. Under such circumstances, we think either partner of the dissolved firm had such an interest in settling the concerns of the partnership, and such necessary authority for that purpose, that he might receive back this note, which had by them been put wrongfully in circulation, or its ultimate payment wrongfully defeated. This view we think strictly in accordance with the decided cases upon this subject. *King* v. *Smith*, 19 E. C. L. 299. In *Union Bank* v. *Hull*, 1 Harper, 245, it was held that where a firm had indorsed a note, it was competent for one of the partners, after a dissolution, to consent to the hold-

er making a compromise with the maker, when such partner has no special authority to settle the concerns of the firm, and that this will bind the other partners. It is true that, in receiving back the note against Peake, it was not competent for Throop to give the note of the firm, as he attempted to do. He had, after the dissolution, no authority to create any new obligations on the part of the partnership, nor to change the name or character of the former ones. But he might pay, or release, a partnership debt, and much more might he receive back a note or bill, which the firm had fraudulently put in circulation.

3. But it is said that the plaintiff, by surrendering the note against Peake, and the guaranty of the firm, and accepting the individual note of Throop, released the firm from all obligation. If this had been understandingly done, I have no doubt the other partners would have been released. *Arnold* v. *Camp*, 12 Johns. 409. But this was not the fact. The plaintiff took *the note of the firm,* executed by Throop after the dissolution. This note Throop had no right to give, and the plaintiff cannot recover upon it against the firm. Shall he then be still compelled to rely upon it? If the note is good to pay the debt of the firm, and the firm insist upon it for that purpose, they ought also to be bound by it as the note of the firm, for such it purports to be on its face; and that is an end of this case. But if the firm repudiate the note, as they may, then also may the plaintiff, for it would involve an absurdity too monstrous, even for argument, to contend that the firm might insist upon it for one purpose, and repudiate it for all others. The case comes back to the failure of the Peake note, by the fraud or mistake of the firm, and without the fault of the plaintiff, and in consequence of that, the note surrendered to one of the partners. Nothing then remains, but the original debt or demand of the plaintiff, against the firm, wholly unpaid and uncancelled. *Gilman* v. *Peck*, 11 Vt. R. 516. Where then is the great wrong or hardship in the firm still being compelled to meet this their just debt? I confess if the arm of the law were so short that it could not be made to reach so palpable a case as the present, I should blush for its shortness, and for its helpless inefficiency.

The judgment of the county court is affirmed.