### H. AMIDOWN & Co. *v.* OSGOOD & MINARD.

*Book Account.   Practice.   Dissolution of Copartners.   Liability of the retiring partner.*

If a question is not raised in the court below, it cannot be urged or insisted upon as forming any ground of error in the supreme court.

Where goods were delivered before any publication of the dissolution of the partnership, and the retiring partner still remained in the store, though in the capacity of clerk, but with the old sign up, it was held, that the credit must be regarded, as fairly given to the partnership, and that the vendor of the goods, in regard to dealings was entitled to the same notice, as if the first dealing had been before the actual dissolution of the copartnership.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the following facts:

That the goods specified in a bill marked "A." amounting to the sum of $47,14 were sold and delivered by the plaintiffs to George Minard, on the twenty-eighth day of April, 1849, and also the goods specified in a bill marked "B." amounting to the sum of $114,04 were sold and delivered to George Minard, on the eighth day of October, 1849, and that said goods have not been paid for, or any part of them. That during the year 1848, and up to the first day of April, 1849, the said Minard and defendant Osgood, were doing business in the village of Bellows Falls, as copartners in the mercantile business, under the name and firm of Osgood & Minard.

That on the first day of April, 1849, they dissolved said copartnership, and business was carried on or continued in the same store by the said Minard until sometime in the month of January, 1850, when said Minard failed.

That while said Osgood & Minard were in company they kept a sign upon the store occupied by them, with the name of the firm upon it, and that said sign remained upon said store unaltered up to the time said Minard failed, in January, 1850.

That in the latter part of August, 1848, one Wm. A. Beecher, a clerk of the plaintiffs, noticed the sign of the defendants, and called at their store, had conversation with said Minard, and invited him to call upon plaintiffs and purchase goods; that in April, 1849, said Beecher saw said Minard in Boston and again urged him to call upon the plaintiffs; that in consequence of said invitation said Minard did call upon the plaintiffs and purchased the goods specified in bill "A."; that nothing was said by either party about the dissolution of the firm of Osgood & Minard; that the bill was made out and forwarded with the goods to said Minard in the name of Osgood & Minard; that Minard did not know in whose name the bill was made out until he received said bill, and did not then inform the plaintiffs that it was incorrect.

That a Mr. Harding, one of the plaintiffs' firm, was in Bellows Falls in the summer of 1849, between the times of the purchase of the goods named in said bills, and called at said Minard's store, had conversation with said Minard, but nothing was said

about the dissolution of said firm of Osgood & Minard, or of the error of said plaintiffs in charging said goods to the defendants.

That said Minard without further invitation called at plaintiffs' store in October, 1849, and purchased the second bill of goods, marked "B."; that nothing was then said of the dissolution of the said firm of Osgood & Minard, and that said Minard at this time purchased a shawl for his wife and paid the money for the same. That it did not appear whether said bill was handed said Minard in Boston or sent with the goods.

That soon after the return of said Minard from Boston, in April, 1849, when the first bill of goods were purchased, a notice of the dissolution of said firm of Osgood & Minard was published in the Bellows Falls Gazette; that Osgood, after the dissolution, April first, 1849, remained in the store for said Minard until after his return from Boston, and then removed to the West.

That sometime between the purchase of the goods, October 8th, 1849, and the purchase of goods October 18th, 1849, of the plaintiffs in his name alone to the amount of $30,72, said Minard sent a quantity of mittens to the plaintiffs, with an accompanying letter consigning them in his own name, and that at the time of forwarding to the order of Minard the last named bill of goods to the amount of $30,72, the plaintiffs had in their possession mittens, more than sufficient to pay the amount of said last named bill.

The auditor found due plaintiffs on Bill "A." $51,36 and on bill "B." $124,04, making in all the sum of $175,40, subject to the opinion of the court, whether from the facts, plaintiffs are entitled to recover for either or both said sums.

The county court, April term, 1851,— COLLAMER, J., presiding,— rendered judgment on the report in favor of the plaintiffs. Exceptions by defendants.

*Stoughton & Baxter* for defendants.

We insist that inasmuch as the plaintiffs never had any deal with the defendants during their said copartnership, that no notice of the dissolution was necessary to protect the retiring partner from liability. 3 Kent Com. 67. More especially if the retiring partner was not by his own permission held out as a partner, and credit given to him by the plaintiffs. 54 Com. Law 31.

The case simply shows that the plaintiffs clerk after the dissolution saw the names of the old firm upon a sign over the door of the store, but it nowhere appears that this fact was ever reported by that clerk to the plaintiffs.

The report shows that one of the plaintiffs in the summer of 1849, and after the dissolution had been published in the Gazette, was, at Bellows Falls, but it does not appear that he ever saw said sign. Now, we insist that the court are not at liberty to *infer* that the retiring partner *permitted* himself to be held out as a partner, and that the plaintiffs gave credit to him. 54 Com. Law 31. 47 Com. Law 580. 29 Com. Law 377.

The publication of the dissolution, was after the first purchase and before the second, advertised in the Gazette, and this was all the notice necessary to protect the retiring partner from liability to those who had had no deal with the firm during the continuance of the copartnership. *Prentiss* v. *Sinclair*, 5 Vt. 149.

The auditor finds the fact that the mittens consigned to the plaintiffs were more than sufficient to pay the bill of $30,72, and it is clear that the goods thus consigned although in the name of Minard, must be applied in payment of the earlier account. 30 Eng. Com. Law 283.

*A. Keyes* for plaintiffs.

1. In the sale of the bill "A." the plaintiffs were dealing with an old firm known to them as such, and without any notice express or implied of a dissolution, they were not affected by the dissolution, whatever it was. 8 Wend. R. 423–4. 6 Johns. R. 144. 6 Cowen 701–4. Collyer on Part. 310, 312. *Prentiss* v. *Sinclair*, 5 Vt. 149. *Atwater* v. *Moore*, 10 Vt. 75. Story on Part. 247 to 252.

2. Bill marked "B." was sold after dissolution published in Bellows Falls Gazette. But no actual notice was given the plaintiffs, and as they had been former customers of the firm they could not be affected by presumptive notice. *Graves* v. *Merry*, 6 Cowen 701–4, and authorities cited.

The purchase of the shawl for his wife and paying the money, while bill "B." was taken on credit, tended to confirm the plaintiffs that they were dealing with Osgood & Minard.

3. The charge of the last bill "C." to Minard alone can have

XXIV.    19

no effect to alter the case, for Minard had then a credit for mittens sent plaintiffs, more than sufficient to pay that bill.

BY THE COURT. There does not seem to be any good reason to require the plaintiffs to set off the value of the mittens consigned to them by Minard, against the goods sold on the credit of Osgood & Minard, if *the plaintiffs were justified in so selling the goods.* For firstly, no such question appears ever to have been raised in the case before this time, and by every rule of practice it must have been raised in the court below, in order to form any ground of error in this court. Secondly, if the two first bills of goods were fairly delivered on the credit of Osgood & Minard, then there can be no doubt the offset must first be applied to extinguish Minard's own debt, which may have been contracted upon the faith of this very consignment. The only question, then, is, whether defendants are liable for the goods charged to them.

The law requires, that upon the dissolution of a mercantile partnership, notice of such dissolution shall be published in a newspaper circulating in the place of such business, in order to exonerate the retiring partner, even, as to those with whom the firm have had no previous dealings, and as to these latter actual notice is required.

In the present case there can be no doubt the goods were really delivered, upon the credit of the partnership, which is the ground of decision in the case cited, 54 Com. Law 31. *And as* to the bill marked "A." the goods were delivered before any publication of dissolution, and while Osgood still remained in the store, as clerk to be sure, but with the old sign still up. Under these circumstances it seems to us the credit must be regarded as fairly given to the partnership. And in regard to future dealings we do not see why in justice the plaintiffs should not be reasonably entitled to the same notice, as if the dealing had been before the actual dissolution. Osgood knew that *the firm would be* liable for all goods bought by Minard on the credit of the firm, before the publication of the dissolution, and as he trusted him with that power, it is but reasonable he should be bound to take notice how he used the power, and be bound by his use of it, the same as if he had actual notice, and *so in reality to be bound* by his abuse of the power.

This would impose upon him the necessity of searching out those with whom Minard had dealt upon the credit of the firm, before the publication of notice of the dissolution of the copartnership, and give them actual notice of such dissolution. There seems to be some equity in requiring this in the present case, as if Osgood had had actual notice of the purchase of the first bill of goods upon the partnership credit.

The dissolution did not become effectual, as to third persons, until the publication. As to everybody but the parties, the date of the dissolution is the time of the publication, as the date of the record of a deed is the date of the deed to all purposes of third persons, who have acquired interest in the land subsequent to the date of the deed.

Judgment affirmed.