## NORVAL D. WAIT v. CYRUS BREWSTER.

*Deposition. Partnership. Effect of a promissory note given for a pre-existing debt.*

A party who has taken a deposition, which the law does not require to be filed in court, is not obliged to produce it, at the request of the other party, on trial, notwithstanding the opposite party appeared when it was taken, and cross-examined the deponent, and though it has been filed with the clerk of the court by the party taking it.

A retiring partner who gives notice by publication in a newspaper that he has ceased to be a partner, but who after that allows his name to appear in the firm as a partner, and continues in its employment, is liable as a partner to one who deals with the firm, and is misled by the appearances, and has no notice that he is not a partner, although the fact is generally known at the place where the contract is made.

Wait *v.* Brewster.

Ordinarily, a note given for a previous debt is *prima facie* payment of such debt; but *aliter*, if the parties stipulate to the contrary, or if the party receiving the note take it under a misapprehension of facts, supposing that parties· are liable upon it who are not.

The plaintiff contracted for the sale of certain property with a firm, of which the defendant was ostensibly, but not actually, a member, under such circumstances that the defendant, *as to the plaintiff*, was liable upon the contract as a partner. Afterwards the plaintiff took the firm's negotiable note for the amount due upon the contract, but the defendant did not participate in giving this note, but it was taken by the plaintiff under the supposition that the defendant was liable upon it, and with no intention of releasing him from his original liability; *Held*, that the note did not operate as a payment of the original demand.

ASSUMPSIT. The action was originally brought against William Brewster and Cyrus Brewster, as partners under the firm of W. & C. Brewster, but no service was made on William Brewster, the writ being returned *non est* as to him. The declaration contained the common counts, and also a count on a promissory note for one hundred and three pounds and three pence, Halifax currency, dated August 30th, 1854, signed by W. & C. Brewster, and payable to the plaintiff or order, in six months after date, at the City Bank in Montreal. Plea, the general issue, and trial by jury, at the April Term, 1858,—PIERPOINT, J., presiding.

The plaintiff gave in evidence the note described in the declaration, accompanied with evidence tending to show that the signature thereto of W. & C. Brewster, was made by William Brewster, originally one of the defendants; that William and Cyrus Brewster had been co-partners in the hardware business, in Montreal, doing business under the name of W. & C. Brewster; that they were so in co-partnership and doing business at the time the note in question was executed, and for many years prior thereto; that the plaintiff resided in Highgate, and was engaged in the manufacture of straw cutters; that the first knowledge the plaintiff had of the firm or of either of the members of it, was on the receipt by him of a letter from Montreal, signed W. & C. Brewster, containing what purported to be the business card of that firm. This letter was proved to have been destroyed by fire, and the plaintiff introduced parol evidence tending to show that the defendants, in that letter, informed him that they

desired to contract with him for straw cutters, and wished him to come to Montreal and see them; that this letter was received in September, 1853; that on its receipt the plaintiff went to Montreal and to the store of the defendants; that on the front of the building in which they traded, was painted in large letters, "W. & C. Brewster;" that on entering the store he found William Brewster there, and entered into conversation with him relative to the sale of straw cutters, and their price; that William said to him that he wanted to see his brother Cyrus before he closed a trade; that when Cyrus came in the defendants went into the office and talked together, and then called him in and they closed a trade; that the contract was closed in the presence of the three; that Cyrus drew up a contract or memorandum of the agreement, which was then signed by W. & C. Brewster on the one part, and the plaintiff on the other; that the contract was for the delivery of two hundred straw cutters by the plaintiff; and that nothing was said at the time to give the plaintiff to understand that William and Cyrus were not co-partners in the business.

The plaintiff also introduced evidence tending to show that he delivered the straw cutters under this contract, and that the note in question was given for the balance due him thereon; that for many years prior to the execution of this note, and for some time subsequent thereto, the entire business of the establishment was carried on in the name of W. & C. Brewster; that Cyrus was then in the store engaged in the business as a co-partner would naturally be, and used the name of W. & C. Brewster in the transaction of such business; that the plaintiff made his contract with them as co-partners, understanding them to be such, and that he knew nothing to the contrary until January, 1854, after all the straw cutters were delivered, when he went to Montreal to collect the balance due him on the contract; that on this occasion he saw William Brewster first, who put him off; that he then went to Cyrus Brewster and urged a settlement; that Cyrus then told him to go to William, that he was not a partner and had nothing to do with the business; that the plaintiff insisted that he was liable on the contract, as he had taken part in making it, and that he dealt with him as a partner, supposing him to be such; that Cyrus said they had a right to do business in that way in Canada, and that he

was not liable: that the plaintiff did not then settle with the defendant, but went to Montreal again in August, 1854, when he effected a settlement with William, and took the note in question.

The plaintiff also introduced evidence tending to show that the note was not to cancel his claim unless it was paid by the defendants, and that the plaintiff took it understanding that Cyrus Brewster, as well as William, was liable upon it, and that Cyrus was at the store when the plaintiff was there at this time; but it did not appear that he was present when the settlement was made and the note executed.

The defendant introduced evidence tending to show that for a number of years prior to 1840, William and Cyrus Brewster had been co-partners in the hardware business, at Montreal, under the name of W. & C. Brewster; that in 1840 they dissolved their co-partnership as between themselves, but gave no notice of it; that the business was carried on in the name of W. &. C. Brewster, as before, and that Cyrus continued in the business only as a clerk, and under a salary, but considered himself liable to others as a partner, as no notice of the dissolution had been given; that the business was so conducted until January, 1847, when by a "notarial contract" they made a final settlement and dissolution of the partnership, and published notice thereof in the Montreal Gazette (a newspaper which been long established and of extensive circulation), in January, 1847, and for several successive months thereafter, together with a notice signed by William Brewster that the business would be carried on by him alone under the old name of W. & C. Brewster.

The defendant then offered to prove that the dissolution was a matter of *general notoriety* in Montreal. This was objected to by the plaintiff as being too general and indefinite, and the court excluded the evidence in that form, and required the witnesses to state what knowledge they had that the fact of the dissolution and the manner in which the business was then carried on, were known to the inhabitants and business men in Montreal.

The testimony then introduced by the defendant tended to prove that the fact of the dissolution, and the way the business was carried on by William alone under the old name of W. & C.

Brewster, was known to a very large number of business men in Montreal, including those engaged in the hardware business, the officers in the banking institutions, and various other business men in the city.

The defendant also proved the statute of Canada, 12 Victoria, chap. 45, passed May 30th, 1849. This statute prescribed certain requisites, in the way of a public declaration and notice, to a valid dissolution of partnership, as to third persons. No copy of this statute was furnished to the reporter, and its precise tenor and effect cannot be stated.

The testimony also tended to prove that a declaration of the dissolution of the firm of W. & C. Brewster and the continuance of the business by William alone, had been filed, agreeably to the provisions of this statute; that such declarations are entered in a book kept by the officer with whom they are filed, and that such book is kept open for inspection (gratuitously) by all who wish, and that those books are referred to by business men for information on such subjects.

The defendant also introduced evidence tending to prove, that after the final dissolution in 1847, Cyrus remained at the store the principal part of the time, up to the date of the transactions with the plaintiff; that he was not a partner, nor interested in the business, but aided and assisted his brother in his business, acted as his clerk, sold goods for him, and kept the books; that when the plaintiff came to the store and made the contract for the delivery of the straw cutters, the contract was made solely with William; that Cyrus had nothing to do with the contract, and knew nothing about it until the plaintiff and William came into the office in the store where Cyrus was, and told him what contract they had made about the straw cutters, and requested him to make a writing stating the contract; that he at first objected, but subsequently consented to make it, and did so, and handed it to the plaintiff, saying to him that he must get William to sign the contract, as he was not a partner of his brother's, and had nothing to do with the business; that the plaintiff took the writing and left the office, and that Cyrus never saw it afterwards; that the bargain was not made nor the contract signed in the presence of Cyrus; and that on other occasions and while the bargain was being

made, and also before the straw cutters were delivered, the plaintiff was informed that Cyrus was not a partner in the business.

On the trial there was a discrepancy between the testimony offered by the plaintiff and that offered by the defendant, as to the time when the contract in regard to the straw cutters was executed. The witnesses for the defendant referred to a contract executed between William Brewster and one Sykes, as to a patent right to make straw cutters, which they stated was made on the 21st day of September, 1853, and they also testified that the contract with the plaintiff was made subsequently to that date. The defendant then offered the contract with Sykes in evidence to show the correctness of his witnesses as to its date. This contract was objected to by the plaintiff and excluded as evidence by the court. The plaintiff made no question about the date of the Sykes contract, and did not claim that the defendant's witnesses had not named its true date.

The court charged the jury, among other things not excepted to, that if they should find from the testimony that William and Cyrus Brewster were not co-partners in fact, as between themselves, still, if Cyrus participated in making the contract with the plaintiff, and knew that it was made in the name of himself and brother, drew up the written contract, and was present when it was executed, without giving the plaintiff any knowledge or intimation of the fact that he was not a partner, but suffered the plaintiff to enter into the contract supposing he was dealing with them both, as the plaintiff's evidence tended to show, then the plaintiff would have a right to treat him as a partner, and that as between the plaintiff and William and Cyrus, in regard to this transaction, they were partners, unless the plaintiff, at the time, had knowledge that they were not partners.

The jury were further charged that if they should find that under the foregoing instructions, Cyrus was a partner with his brother as between them and the plaintiff, and that William had used the name of W. & C. Brewster in the making of this contract, with the authority, knowledge and concurrence of Cyrus, and that William did on the settlement of the dealings under the contract between them and the plaintiff, execute the note in question in the name of the firm, then Cyrus would be liable on

the note, unless something had taken place between William and Cyrus subsequent to the making of the contract and prior to the execution of the note, changing the existing relations between them and divesting William of the right and authority to use the name of the firm; and the jury were told that it was not claimed by the defendant that any such alteration had taken place during this last named period; and that the liability of Cyrus would be the same, even though the jury should find that in January, 1854, after the straw cutters were delivered and before the execution of the note in suit, the plaintiff had been informed by Cyrus that he was not a partner with his brother, and claimed that he was not liable on the contract.

The court further told the jury that if they should find that William had no authority from Cyrus to sign the co-partnership name to the note, and that for such reason Cyrus was not liable on the note, yet, if they found from the evidence under the charge of the court, that Cyrus was liable to the plaintiff on the original contract, and should also find that at the time the note was taken by the plaintiff, he took it supposing that both parties were made liable thereby, and without any intention of discharging Cyrus, and with the understanding that the note was not to extinguish the original claim unless it was paid, then, in such case, the plaintiff would be entitled to recover on the general counts in his declaration, for such amount as the jury should find to be his due from the defendants on the original contract.

The court further told the jury that the statute of Canada which was proved in the case, and the declarations filed under it, had no effect upon the legal rights or liabilities of the parties in this case, any further than that the filing of such declarations and the facilities for obtaining a knowledge thereof, together with the publications of the dissolution and the mode in which business was to be done in future, and the publicity of these facts in Montreal, were all matters of evidence, which the jury were to take into consideration in determining whether the plaintiff, when he made the contract, had actual notice that William and Cyrus were not co-partners; that in view of the evidence of the parties and the lapse of time such evidence would be slight, but it should be weighed by the jury.

It appeared upon the trial, that the plaintiff had given the defendant notice to appear at the taking of the deposition of Solomon Sykes, and that the defendant did appear and cross-examine the witness; that the plaintiff had the deposition opened by the clerk, who at the time made and signed the usual entry on it that it was opened and filed at that time; and that the deposition remained with the clerk until a short time before the trial, when it was taken by the plaintiff. The defendant called upon the plaintiff to produce the deposition, that the defendant might use it. The plaintiff declined to do so, and the court decided that the plaintiff was not obliged to produce it.

The jury returned a verdict for the plaintiff.

To the foregoing charge and decisions of the court the defendant excepted.

*H. R. Beardsley* and *H. E. Seymour*, for the defendant.

1. The evidence that the dissolution of the firm of W. & C. Brewster was matter of *general notoriety*, should have been admitted; 27 Vt. 498; *id.* 667; 1 Smith's Lead. Cases 735.

2. The charge of the court was not correct, that Cyrus Brewster was liable, under the circumstances detailed in that part of the charge, even if they should find that he and William were not in fact partners; 23 Vt. 711; 24 Vt. 642; *id.* 278; 2 Cow. & Hill's Notes to Phil. Ev. 1146.

3. The charge was not correct as to the liability of Cyrus upon the note. The execution and delivery of the note was a new contract, and the effect of the previous notice from the defendant to the plaintiff, that he was not a partner, was the same upon his liability on the note, as similar notice before the original contract would have produced on Cyrus' liability on that; Collyer on Part. § 541; 1 Stephen's *Nisi Prius* 815 (31).

4. The original contract was merged in the note; 28 Vt. 77; *id.* 378.

5. The effect of the statute of Canada, and the declaration and notice of dissolution made and published under it, amounted to legal constructive notice to the whole world of the dissolution.

*H. S. Royce, L. E. Pelton,* and *Wm. W. White,* for the plaintiff.

1. The testimony offered by the defendant to show that the dissolution of the firm was a matter of *general notoriety* in Montreal, was properly excluded; *Pelcher* v. *Barrows*, 17 Pick. 361; *Goddard* v. *Pratt*, 16 Pick. 412; *Southwick* v. *Allen*, 11 Vt. 75; *Hicks* v. *Cram*, 17 Vt. 449; *Carlton* v. *Ludlow Woolen Mill*, 27 Vt. 496; Collyer on Part. 486.

2. There was no error in the charge. The defendant participated in the making of the contract by conversing with the plaintiff in reference to it, and by reducing it to writing. He gave no intimation that he was not a partner, but suffered the plaintiff to enter into the contract relying upon his responsibility, and this too, in the store upon which was the sign of the firm. Under these circumstances he was liable to the plaintiff as a co-partner, whether he was one in fact or not; Collyer on Part. 86; *Stearns* v. *Havens*, 14 Vt. 540; Story on Con. 205; *Hicks* v. *Cram*, 17 Vt. 449; *Cottrill* v. *Vanduzen*, 22 Vt. 511.

3. The defendant is not discharged by the receipt of the note by the plaintiff. The giving a note for a previous indebtedness will not extinguish the original debt, unless it be intended to have that effect. Certainly it will not in a case like this, where there was an express understanding that it should not extinguish the original indebtedness; Collyer on Part. 691, note; Story on Cont. (1st Ed ) sec. 672.

ALDIS, J. This is an action against William Brewster and Cyrus Brewster, as partners in Montreal under the firm of W. & C. Brewster. There is a return of *non est* as to William.

Cyrus defends upon the ground that he was not a partner when the contract here sued upon was made with the plaintiff, but that William Brewster carried on the business *alone*, though under the name of W. & C. Brewster.

I. A question has arisen as to the admissibility of a deposition taken by the plaintiff. It was taken with notice; the defendant appeared and cross-examined the witness; the plaintiff had the deposition opened and filed by the clerk, and left in his office; but it was subsequently taken by the plaintiff, who refused on the trial to produce it, though requested by the defendant. The court held that the plaintiff was not bound to produce it.

Wait *v.* Brewster.

When depositions were taken *exparte* under the old law, they were required to be filed thirty days before court in the clerk's office, but that provision of the statute was repealed in 1854, when the act was passed requiring notice in all cases of taking depositions. When the deposition in this case was taken and filed there was no law requiring it to be filed. The act of the plaintiff in filing it was mere supererogation. The case stands as if it had not been filed. In regard to depositions taken with notice, though the practice may not have been universal, and perhaps not uniform, we think the practice has been very general in the State, and of long standing, that the party taking the deposition may or may not use it as he sees fit, and can not be required by the defendant to produce it. It is with his depositions as his witnesses, he may use them or not, as he may be advised. If compellable to use them, he might be placed in the situation of presenting testimony which was adverse to him, and which he might believe to be untrue, and perhaps could disprove. The defendant, on the other hand, has it always in his power to take the deposition if he wishes to use it. Viewed as a question of right or of convenience, we think the rule should not be infringed.

II. The main question is as to the defendant's liability as a partner. These are the facts. The plaintiff resided in Highgate, Vermont; the defendant in Montreal. The plaintiff was a manufacturer of straw cutters. He received a letter signed W. & C. Brewster, enclosing a business card with the name of the firm, "W. & C. Brewster," on it. The letter stated that they wished to buy straw cutters of his manufacture, and requested him to come to Montreal and see them. He went, found the sign over their door " W. & C. Brewster," found both William and Cyrus Brewster in the store, negotiated with both about the contract, and closed it in their presence. The defendant, Cyrus, drew up the contract, and it was signed " W. & C. Brewster" in the presence of both of them. No intimation was given to the plaintiff that Cyrus was not a partner. The plaintiff believed that he was a partner. But in fact he was not a partner as between himself and William, although his name was kept on the sign, and used in the transactions of the firm; and it was generally known in Montreal that he was not a partner. He had formerly been

a partner in the firm, but about four years previous to the making of this contract the partnership had been dissolved; and notices of the dissolution and that Cyrus had retired, and that William would carry on the business under the name of W. & C. Brewster, but on his sole account, had been published in the Montreal Gazette, and were notorious in Montreal; but the plaintiff had no knowledge of them.

The defendant, by continuing to be engaged in the business of the firm after its dissolution, and by allowing his name to be kept upon the sign and used in the transactions of the apparent firm, held himself out to the world as a partner. He came within the definition of an ostensible partner, " one whose name appears to the world as that of a partner."

He thereby took upon himself the consequences of holding out such appearances; and one consequence was, that if a person, ignorant of the fact that he was not a partner, should be misled by the appearances to believe that he was, and to deal with him as such, he would as to such person be a partner.

The plaintiff was led to believe from the acts of the defendant, that he was a partner. The name of the firm, the negotiation and signing of the contract said to the plaintiff that the defendant was one of the firm. There was nothing to put the plaintiff on his guard, to lead him to inquiry. The defendant knew that the plaintiff might be misled. It was his duty to see to it that the plaintiff had notice of the real facts, and that he should not be misled by the appearances.

The defendant now claims it was sufficient notice to all dealing with the apparent firm, that he was not a partner in it, that that fact had four years before been published in the Gazette, and was generally known in Montreal. This position is not tenable, for his name appeared as one of the firm, and he continued in its business as before. It was not enough that the fact that he was not a partner was generally known. Many might be ignorant of what was generally known, and this without any fault on their part, and without anything to lead them to inquire about the subject. But no one dealing with the firm could be ignorant of the fact that the defendant appeared to be a partner. On the contrary, every one must know that fact, and would have a right to rely on

it. Hence the' mere *probable presumptive* notice ought not to counterbalance the *actual* knowledge which every one *must* have, and the natural conclusion which every one would draw and would rely upon ; 24 Vt. 278; 11 Vt. 75; 17 Pick. 361.

The court below went no further than this, that a retiring partner who gives notice by publication in a newspaper that he has ceased to be a partner, but who after that allows his name to appear in the firm as a partner, and who continues in its employment, is liable as a partner to one who deals with the firm and is misled by the appearances, and has no notice that he is not a partner, although that fact is generally known at the place where the contract is made. In this there was no error.

The cases cited by the defendant are all of the class where the retiring partner had not allowed his name to be used, or had not interfered with the business of the firm after the dissolution. Such is 2 Camp. 617.

But where the retiring partner suffers his name to appear as one of the firm, he must at least be held liable to those who are misled by it; *Williams et al* v. *Keats et al.*, 2 Stark. 290; *Dolman* v. *Orchard et als.*, 12 E. C. L. 47; *Clapp* v. *Rogers*, 12 N. Y. 283; 10 B. & C. 140; 1 Smith's Lead. Cases 981; Collyer on Part. § 535; Story on Part. § 160; *Amidown & Co* v. *Osgood & Minard*, 24 Vt. 278.

III. Another question in the case is, did the note given by William Brewster in the name of W. & C. Brewster upon the settlement of the contract, operate as a payment of the sum due on the contract.

Ordinarily, a note given for a previous debt is *prima facie* payment of such debt. The law supposes that the parties intended to extinguish the old debt and leave no right of action except upon the note. Such has been the settled law of this State since the decision in *Hutchinson* v. *Olcott*, 4 Vt. 549; see 14 Vt. 83; 13 Vt. 452; 16 Vt. 30; 29 Vt. 42; 26 Vt. 303.

But if the parties stipulate that the note shall not have that operation, then their agreement governs, and the antecedent cause of action still subsists. Other limitations of the general doctrine will appear from an examination of the authorities above cited.

Thus it has been held that when the party takes· the note under a misapprehension as to facts, he supposing that other parties are bound by it who are not, then the intention of treating it as payment is rebutted, and the party may sue upon the original debt.

In this case the note on its face purported to bind both Cyrus and William Brewster.  Under the charge, the jury must have found that the plaintiff took it supposing both were liable on it, and *without any intention of discharging Cyrus*, and with the understanding that the note was not to extinguish the original claim unless it was paid.  It seems difficult to construe this language of the bill of exceptions as not importing a *mutual* understanding to that effect, especially when taken in connection with the previous statement, "that the plaintiff's evidence tended to show that the note was not to cancel his claim, and that the plaintiff took the note understanding that Cyrus as well as William was liable on it."  If "the note was not to cancel the claim," it would seem to be the fair construction to say it ¦was so because the parties so agreed.  But however that may be, we are clear that the finding of the jury has established, that if Cyrus was not bound by the note, then the plaintiff took it under a misapprehension which should relieve him from the implied presumption of payment and remit him to the original contract.  And such must be the construction of the charge of the court if it be not construed as intending a mutual agreement and understanding of the parties.  Upon either construction the note does not operate as payment, and the plaintiff could sue on the original debt, and therefore the plaintiff can recover upon the common counts.  He can recover on them, for he has to prove in any event, that the original debt was not paid except by this note.  This renders it unnecessary for us to decide whether the charge of the court was correct as to the effect which notice to the plaintiff, that Cyrus was not partner, had upon his liability upon the note.

IV.  It is objected by the defendant, that the court erred in requiring the witnesses to state *what knowledge they had* that the fact of dissolution and the manner in which the business was carried on, was known to the inhabitants and business men of Montreal, instead of stating in the first instance, and generally,

that the dissolution was matter of general notoriety, and leaving it for the cross-examination to show their actual knowledge and means of knowledge.

This is a matter of form as to the manner of examining a witness. It does not exclude the testimony, it only presents it at first as it would be left by the cross-examination. All the witnesses' knowledge and means of knowledge are finally elicited. The practice in this matter as to the proper form of examining witnesses as to matters of reputation has not been uniform. As the whole substance of the testimony is in the end fully brought out by either mode, we do not think error can be predicated of either.

The Sykes contract was offered to show a date which the plaintiff admitted the defendant's witnesses had accurately stated. Under such circumstances it was properly excluded. It would not be conclusive evidence of the accuracy of its own date as between persons not parties to it.

As to the statute of Canada, we think it was merely an act of registration not affecting the rights of the parties in this case.

The judgment of the county court is affirmed.