*F. Bigger*, for appellants.

---

## ALLEN *v.* SHARPE ET AL.

PROMISSORY NOTE.—*Indorser.*—*Forged Indorsement.*—The acceptance in good faith, from the maker, who is insolvent, of a note with a forged indorsement

of the name of the payee, in discharge and payment of a note executed by the same maker, with the genuine indorsement of the same payee, known to the holder as an accommodation indorser, will not discharge such indorser on the original note.

APPEAL from the Marion Common Pleas.

DOWNEY, J.—Suit by the appellees against the appellant, on a promissory note, payable in bank, made by Layton Mills, payable to Moses Allen, and indorsed by him to the appellees. The further facts stated in the complaint are, that when the note matured, Mills brought to the plaintiffs, at their bank, another note for a like sum, made by him and payable to the order of said Allen, thirty days after date, and upon the same terms as said first note, which then and there had upon the back of it what purported to be, and Mills represented to be, the indorsement of said Allen; that upon the faith that said indorsement was genuine and authorized, the plaintiffs surrendered to Mills the first note, and took in lieu of it the last named note; that the indorsement was forged, and Allen refuses to recognize the same; that said first named note remains unpaid, and is in the hands of defendant or of the representatives of Mills, who is dead; that at the time the second note was substituted for the first, Mills was insolvent, and the same was received solely upon the faith that the defendant, who was solvent, had indorsed the same, etc.

The defendant demurred to the complaint, and his demurrer was overruled. He then answered, stating in addition to the facts disclosed in the complaint, that he indorsed the note for the accommodation of Mills, who got the money on the same, which was known to the plaintiffs; that the last note was received by the plaintiffs in satisfaction of the note in suit, without the knowledge or consent of the defendant; that he did not know, for fifteen days, that the note sued on was claimed by the plaintiffs as not paid, but during that time he supposed it had been paid by Mills, and he avers the fact to be that it was paid and satisfied as aforesaid; that at the time of the acceptance of the second note, the plaintiffs can-

celled and surrendered up to Mills the first note; where-fore, etc.

The plaintiffs demurred to this answer, because it did not state facts sufficient to constitute a defence, and their demurrer was sustained.  The defendant excepted.

The point presented by the assignment of errors, which calls in question the correctness of the decisions of the court in overruling the demurrer to the complaint and in sustaining the demurrer to the answer, is this:  Were the delivery by Mills to the plaintiffs of the second note, with the name of Allen forged thereon, Mills representing it as genuine, and its acceptance by the plaintiffs as payment of the note on which the action is predicated, Mills being then insolvent, and the plaintiffs relying exclusively on the liability and solvency of Allen, a good defence to the action?

We think that neither upon reason nor authority can these facts be held to be a satisfaction of the note on which the action is predicated.

The alleged satisfaction was not made by Allen.  He, however, sets up what was done by Mills as amounting to a satisfaction.  He ratifies and approves what was done by Mills, and claims that it discharged the note.  Like a principal who ratifies an unauthorized act of his agent, he seeks to give it effect, and make it operative, and to claim the benefit of the act.  If he would ratify and adopt the act of Mills, he must adopt it in whole.  He must be held as making Mills his agent, and as adopting all the parts and attending circumstances of the transaction.  He cannot present and rely upon such part or parts of the transaction as are favorable to him, and reject the residue.  While he adopts and relies upon the delivery of the second note by Mills, as a satisfaction of the note in suit, he must also adopt, ratify, and make his own the falsehood and fraud of Mills, in representing the indorsement upon the second note as genuine, which must have the effect of taking away from the transaction every semblance of a satisfaction.  The appellees did not agree to accept a note on which Mills alone was liable, and he insolvent.  What they

contracted for was a note on which Mills was liable as maker and Allen as indorser. This they did not get, and they are, consequently, not bound by the promise to take the worthless note, and surrender up their right of action upon the first note. Allen, having refused to recognize or admit any liability on the second note, cannot set up the giving of it by Mills as a bar to a recovery on the first one. It seems to be supposed, however, that Allen has some ground to complain, because "he did not know for fifteen days that the note sued on was claimed by the plaintiffs as not paid, but during that time he supposed it had been paid by Mills." What harm was done him, or what damage accrued to him from this ignorance? Mills was insolvent. If Mills had been solvent, and by the lapse of time Allen had lost an opportunity to save himself from loss as his indorser, there would have been some reason for urging this point. But without such a showing the argument is destitute of force.

In *Bell* v. *Buckley*, 11 Exch. 631, the action was upon a bill of exchange. There was a plea of payment, and issue thereon. The evidence, on the trial, disclosed the facts to be that the alleged payment consisted in the delivery to the plaintiff of another bill of the same parties, as appeared, but on which the acceptance was forged. The bill was in that case, as the note was in this, accommodation paper. There the principal in the transaction had become bankrupt, and absconded. Here the principal had become insolvent. It was submitted, in that case, on the part of the plaintiff that the facts did not amount to a payment of the bill. The learned judge was of that opinion, and a verdict was entered for the plaintiff for the amount of the bill and interest, leave being reserved to the defendants to move to enter a verdict for them. Upon a rule *nisi*, after a full discussion of the question, ALDERSON, B., said: "The rule must be discharged. The only question is, whether the defendant has made out that this bill was paid by Thornley. It appears that the day before the bill became due, Thornley came to the bank, and, there being another bill of his due that day, he requested

Allen *v.* Sharpe *et al.*

the manager to 'retire' those bills by discounting two other bills which he brought with him. The manager consented; and for the purpose of retiring the bill for which this action is brought, Thornley gave to the manager a bill for the same amount, and apparently between the same parties, the present defendant being supposed to be the acceptor. It turned out, however, that .it was a bill upon which no action could be maintained against the defendant, since the acceptance was a forgery. The transaction is simply this: the bank take up the bills, and charge in account with Thornley the amount which the discount would have been if it had been discounted by a third person, and they give him credit for the amount of the forged bill, minus the discount. That is no payment of the other bill. Then it is suggested, on the authority of *Clayton's Case* that inasmuch as Thornley paid moneys into the bank after the bill was due, they must be taken as paid in discharge of that bill. But where there is an account on the one side of sums owing, and on the other of sums paid, there is no presumption that the items of payment are in respect of the items owing; it depends on the fact of actual appropriation."

PLATT, B., said: "I am of the same opinion. In order to retire the other bill, the bank discount the forged bill, and give Thornley credit for the amount, minus the discount. That is no payment of the former bill, but a mere substitution of one bill for another, for the purpose of giving the debtor an ulterior day of payment."

MARTIN, B., said: "I am of the same opinion. The case, when understood, is perfectly plain. It is an action against the acceptor of a bill of exchange; the plea states that it was accepted for the accommodation of Thornley, and it goes on to allege that Thornley paid the amount. The defendant must, therefore, establish that fact. Then, what is payment of a bill? It is argued that the delivery of one bill to 'retire' another is payment; in one sense it may be, but the meaning of payment in this plea is an equivalent amount of money given by the debtor to the creditor in satisfaction of

his claim on the bill.    Then what are the facts?    The day
before the bill becomes due, Thornley goes to the manager
of the bank, and induces him to take up the bill, by giving
him another bill which turns out to have a forged acceptance.
That is no payment.    Suppose Thornley had said to the
manager of the bank, 'A. B. owes me a  sum of money, and
here is a document by which he admits the debt, take it and
get the money, and pay the bill which you hold of mine;'
that the manager assented, but, on going to A. B., found that
the document was a forgery, could it for one moment be
contended that there was any payment of the bill?    That,
however, is this identical case, the only difference being, that
here the manager of the bank agreed to accept a document
not payable immediately, but at the expiration of three
months.    Then it is said that the case is one of hardship on
the defendant, who is a mere surety; but assuming that the
plaintiff was bound to consider him other than the principal
debtor, even if this had been an action not upon the bill
itself, but against him as a surety, I think that he would
have had no defence.    It is also said, that it is a case of
hardship, because the defendant, not having been called upon,
would naturally suppose that the bill was paid.    But a per-
son being under the idea that a bill is discharged, when it is
not in fact discharged, nevertheless remains liable.    Accord-
ing to my view of the case, there is not a scintilla of evi-
dence of payment of the bill, in the sense in which that term
is used in the plea; the entries in the bank books are nothing
more than a mode of keeping the accounts by debits and
credits."

In *Wait* v. *Brewster*, 31 Vt. 516, the court, in discussing
what amounts to satisfaction of a note, say: " Ordinarily, a
note given for a previous debt is *prima facie* payment of
such debt.    The law supposes that the parties intended to
extinguish the old debt and leave no right of action except
upon the note."    " But," say the court, " if the parties stipu-
late that the note shall not have that operation, then their
agreement governs, and the antecedent cause of action still

subsists. Other limitations of the general doctrine will appear from an examination of the authorities above cited. Thus it has been held that when the party takes the note under a misapprehension as to facts, he supposing that other parties are bound by it who are not, then the intention 'of treating it as payment is rebutted, and the party may sue upon the original debt."

We are referred by counsel for appellant to *The Pres., etc., of the Gloucester Bank* v. *The Pres., etc., of the Salem Bank*, 17 Mass. 33, where it was held, that " where a banking company paid notes, on which the name of the president had been forged, and neglected for fifteen days to return them, it was held that they had lost their remedy against the person from whom the notes had been received." This case is wholly unlike the one under consideration. There the party who presented to the bank the forged bills was an innocent party, and it was important to him to have the bills returned at once, if they were not genuine, so that he might return them to the party from whom they had been received. And in addition to these facts, the forged signature was that of the president of the bank, which received and paid the bills, and must be presumed to have known immediately of the spurious character of the bills.

We are also referred to *Coggill* v. *The American Exchange Bank*, 1 Comst. 113, but have been unable to see its force as an authority in the case under consideration.

Professor Parsons, in his work on notes and bills, is cited by appellant. He says: "As money paid under a mistake of fact may always be recovered back, one who pays money on forged paper, by discounting or cashing it, for example, can always recover it back, provided he has not contributed to the mistake himself, materially, by his own fault or negligence, and provided that by an immediate or sufficiently early notice, he has enabled the party to whom he paid it to indemnify himself as far as possible." 2 Pars. Notes and Bills, 597. Why can he recover it back? Simply because there was no consideration for its payment. He

supposed he was getting a valid and genuine instrument, when, instead, he got a forged and worthless piece of paper. Suppose, instead of having paid money for the forged paper, he had given up a note or bill which he held, would there be any consideration for that act? Would he be bound to lose his right of action any more than he would be bound to lose the money which he had paid for the forged paper? Surely not.

We are satisfied that there is no error in the record in this case.

Judgment affirmed, with costs.

*N. B. Taylor, E. Taylor,* and *W. Wallace,* for appellant.
*A. G. Porter, B. Harrison,* and *C. C. Hines,* for appellees.