No. 8136.

## LOVINGER *v.* FIRST NATIONAL BANK OF MADISON.

PROMISSORY NOTE.—*Principal and Surety.—Payment.—Mistake.—Forgery.*— Where by a forgery of the signature of his former surety to a promissory note, the principal in a note discounted at bank deceives the bank and obtains a renewal of the loan and a surrender of the old note, and delivers it to the surety as paid and thereby induces him to believe that it has been paid, the truth coming to his knowledge only after the principal has become insolvent and absconded, the bank may recover from the surety, upon the old note, upon the ground that it was surrendered by mistake.

SAME.—*Renewal of Note by Forged Note.—Payment of Interest.—Discharge of Surety.*—A renewal of a loan by the use of a forged note, whereby the lender is deceived, interest being paid for the period in advance, is not binding upon the latter, and therefore will not discharge a surety for the original loan.

SUPREME COURT.—*Immaterial Evidence.—Harmless Error.*—A judgment will not be reversed for error in admitting immaterial evidence, unless it is made to appear that the appellant was in some material respect probably injured thereby.

From the Jefferson Circuit Court.

*E. R. Wilson* and *E. G. Hay*, for appellant.

*C. A. Korbly*, for appellee.

Lovinger *v.* First National Bank of Madison.

NIBLACK, J.—Action by the First National Bank of Madison, against James D. Lovinger, on a promissory note.

The complaint was substantially as follows:

The plaintiff, a national bank, says, that on the 22d day of May, 1877, James D. Lovinger and Otto R. Halpert jointly executed to the plaintiff, for a loan of money made to said Otto R. Halpert by said bank, as makers, a promissory note, whereby said Otto R. Halpert and James D. Lovinger, *as principals,* promised to pay said bank $300.00 three months after said date, with interest, attorneys' fees, and other usual stipulations. That the bank discounted said note on the faith and credit of said James D. Lovinger.

That when said note fell due in August, 1877, said Halpert brought a new note, for same amount, and of like terms, made by him, and purporting to have been made by said Lovinger, and renewed said first mentioned note.

And afterward, on November 24th, 1877, when the second note fell due, Otto R. Halpert brought to the plaintiff a third note, for a like sum of money, and of like terms, signed by said Halpert, and purporting to have been signed by said Lovinger, as joint makers, payable two months after date, and renewed said second note.

That at each of said renewals said Halpert represented that said Lovinger had executed said new notes, and that he and said Lovinger desired to renew the former notes; that plaintiff relied upon said representations, and renewed the loan made in the first place; that the first and second notes were respectively surrendered to Halpert upon their renewal, who delivered the first one to the defendant Lovinger, who destroyed it, which fact was alleged as a reason for not filing a copy of said note with the complaint; that the plaintiff at the time believed said second and third notes to be valid and genuine notes of said James D. Lovinger, and had no notice to the contrary, and relied wholly upon his solvency, credit and standing, in making said loan and discounts aforesaid, and not upon Halpert.

That said second and third notes were forgeries as to said James D. Lovinger, and he wholly repudiates them. That plaintiff had no knowledge whatever that said second and third notes were forgeries as to the signature of said Lovinger, until about the 22d day of January, 1878.

That said Halpert became heavily involved and insolvent in November and December, 1877, and on the 19th of January, 1878, absconded for parts unknown, leaving no property out of which said debt could be collected.

That, as soon as the plaintiff discovered that said last mentioned notes were forgeries, the plaintiff immediately notified the said Lovinger, that plaintiff would hold him responsible for and upon said first mentioned note, and that it was due and unpaid, and offered to surrender to him said last mentioned note, which he declined to receive, and which plaintiff brings into court.

The defendant answered in five paragraphs:

1. In general denial.

2. Setting up special matters, but withdrawn before issue joined.

3. Payment in money, and by the substitution of another note.

4. That the note in suit was given for a loan of money by plaintiff to said Otto R. Halpert, and for no other purpose; that Lovinger was surety only, which was known at the time by plaintiff; that the forged notes had the genuine signatures of said Halpert thereto, and were received by plaintiff without the knowledge or consent of Lovinger, who had no notice of the same, until informed by the officers of the bank on the 22d of January, 1878.

That on the 25th day of August, 1877, when said first note matured, said Halpert brought it to Lovinger representing to him that the same was paid off, and delivered it to this defendant, Lovinger, who in good faith believed the same was fully paid, as he lawfully might.

That on said 22d day of May, 1877, when said loan was

so made to said Halpert, and said note executed, and for four years prior thereto and from thence to the 22d of January, 1878, said Halpert resided within the jurisdiction of this court at Madison, Indiana; that during all that time he was on the most intimate terms and business relations with the officers of plaintiff, who made to him said loan, and had said subsequent transactions with him, they being well acquainted with his handwriting, and that this defendant had no knowledge of the same; that during all this time he was a prominent business man in said city, of good financial standing, credit, and reputation therein, and with said plaintiff; that he was solvent and responsible for said debt, carrying on therein and during all of said time a large and flourishing commercial college, and book and stationery store, owning and controlling goods and merchandise and other property of the value of $2,500, out of which said debt could have been made by legal process at any time from the maturity of said note in suit continuously until said Halpert absconded in January, 1878.

That had said plaintiff not delivered up said note in suit to said Halpert, thereby enabling him as aforesaid to deceive plaintiff with reference to the same, and had plaintiff not so kept from defendant all knowledge of said extensions on said two subsequent notes as alleged, defendant could have collected the same from said Halpert and saved himself from loss; but he alleges that by the acts and conduct of plaintiff in concealing from defendant all the aforesaid, and being entirely ignorant of all the same until the 22d day of January, 1878, aforesaid, and after said Halpert had become wholly insolvent and absconded to parts unknown, defendant by the *laches* of plaintiff is wholly deprived from recovering anything from said Halpert, and, if plaintiff is allowed to recover herein, he will be without any remedy.

5. That the defendant was only surety on the note sued on, and the time of the payment of the debt which that note was given to secure had, for a valuable consideration and

without the knowledge or consent of the defendant, been extended by the plaintiff.

A demurrer for want of sufficient facts was sustained to the fourth paragraph of the answer, and issue was joined on the third and fifth paragraphs. Trial by the court. Finding for the plaintiff. Motion for a new trial denied, and judgment on the finding.

Error is assigned:

1. Upon the overruling of the demurrer to the complaint.

2. Upon the sustaining of the demurrer to the fourth paragraph of the answer.

3. Upon the refusal of the court to grant a new trial.

Daniel on Negotiable Instruments, at section 1369, 2d ed., vol. 2, p. 343, says: "It is a general principle of law that money paid under a mistake of fact may be recovered back. And accordingly, where one pays money on forged paper by discounting or cashing it, he can always recover it back, provided he has not himself contributed materially to the mistake by his own fault or negligence, and provided that by an immediate or sufficiently early notice he enables the party to whom he has paid it to indemnify himself as far as possible. And now the doctrine is favored that even negligence in making the mistake is no bar to recovery. This rule is of general application.  *  *  *  *  *  *

" It follows from the rule as stated, that if a valid instrument be rendered up, and one that is forged given in place thereof, it will constitute no valid payment; and even an indorser of the note surrendered up will not be discharged—his liability having been fixed by due demand and notice."

This rule was fully recognized and applied by this court in the case of *Allen* v. *Sharpe*, 37 Ind. 67, and is, in principle, well supported by other text-writers, and well considered cases.

In the case of *Allen* v. *Sharpe, supra,* the insolvency of Mills at the time he induced the appellees in that case to accept the forged paper in place of the note then sued on, was

commented upon by the court as a circumstance of some importance bearing upon the equitable relations of the parties; but it was not a controlling element in that cause, and what was said concerning it did not affect the general principles upon which the case was decided.

There was nothing averred, either in the complaint or in the fourth paragraph of the answer in this case, from which culpable negligence on the part of the plaintiff can be inferred, or from which it can be claimed that there was unreasonable delay in giving notice of the forgeries after they were discovered.

The court did not, therefore, err, either in overruling the demurrer to the complaint, or in sustaining the demurrer to the fourth paragraph of the answer.

Thomas A. Pogue, the cashier of the bank, testified as a witness on behalf of the plaintiff.

Counsel for the plaintiff asked him if he would have loaned the money to Halpert if Lovinger, or some other good surety, had not gone on the note. To this, over the objection of the defendant, he answered, " We would not."

The witness was then, also, asked what was Lovinger's financial standing at the time the note sued on was made and at the times the two forged notes were taken from Halpert by the bank.

To this, over the like objection of the defendant, he answered, " Lovinger was then and still is a man of good standing and credit."

The defendant was a witness, also, at the trial, and, amongst other things, testified, that, on the 25th day of August, 1877, Halpert brought the note sued on in this action to him at his store, in the city of Madison, and in his presence destroyed it. He then offered to further testify that at that time Halpert told him that said note had been fully paid by him, the said Halpert, but the plaintiff objected and the court would not permit him to so testify.

Questions are made here upon these respective rulings of

the court admitting the testimony of Pogue, and rejecting the evidence offered by the defendant.

The evidence admitted, as well as rejected, was irrelevant to the real questions at issue at the trial, and, by the strict rules of evidence, it ought all to have been rejected; but we are unable to see that the answers of Pogue could have worked any injury to the defendant.

The material matters in controversy between the parties were, Had the note in suit been paid? If not, had it, for any of the causes alleged, ceased to be obligatory upon the defendant?

The motives or policy of the bank officers, in discounting the note, the standing and credit of the defendant when the note was discounted and afterwards, and what Halpert may have said privately to the defendant about his having paid the note, were all circumstances merely collateral and wholly immaterial to the real matters in controversy between the parties, as above stated. This court will not reverse a judgment because of the admission of immaterial evidence, unless it is made to appear that the appellant was in some material respect probably injured by the evidence admitted. *McDermitt* v. *Hubanks*, 25 Ind. 232.

It is also argued that the evidence showed a valid agreement for the extension of time for the payment of the original debt, without the knowledge or consent of the defendant; but we know of no principle on which such a construction of the evidence can be maintained.

It was made to appear by the evidence, that both of the so-called renewal notes were forgeries as to the defendant, and that the officers of the bank were fraudulently induced by Halpert to accept them as genuine, and to agree to a renewal of the original note by them in the belief that they were binding upon the defendant as well as Halpert.

Both of the pretended renewals of the original note were, consequently, invalid as contracts for the extension of the time of payment, and might have been repudiated and disregarded at any time by the plaintiff upon a discovery of the

fraud which had been practiced upon it, treating the amounts paid for interest on the forged notes as payments on the original note. *Albright* v. *Griffin*, 78 Ind. 182.

The material allegations of the complaint appear to have been fairly sustained by the evidence, and nothing has been shown from which we can infer that a new trial ought to have been granted.

The judgment is affirmed, with costs.