By the Court,

Cowen, J.
The points made for reversal are, 1. That the defendants below were not dealers with the bank, so as to be bound to give actual notice; and 2. If actual notice were necessary, proof of the notice in a newspaper taken by the bank was actual notice within the rule.
The doctrine that actual dealing by a firm with its creditor requires actual notice on dissolution, is well settled by authority, and was not. denied on the argument; but it was denied that a firm drawing an accommodation note, made payable to the principal generally, and therefore negotiable and endorsed to a bank or person as he pleases, does not make the firm dealers with the holder within the rule. The argument could certainly not be raised with any degree of plausibility, had the note been made originally with the express intent to obt'iin money from the plaintiffs below. This did not directly appear to have been the case; but the note was drawn payable to Moore generally, with the apparent intent that he should go into the money market, and procure it to be discounted by whomsoever he could induce to take it. It was not denied that William Vernon was either actually or at least constructively through his partners a party to the previous notes in the series; and if so, I dan not perceive why the chief justice would not have been right, on that ground alone, in treating him as a dealer with any one into whose hands the notes might come in the course of trade. The acts of his partners in making the notes were his acts; it was intended that money should be obtained on them; they went out as a general letter of credit to whom it might concern, and raised a legal privity between the makers and the holders. The issuing such notes is a proposition to the whole community to deal with such one of them as shall close with the offer; and when money is advanced, the contract of lender and borrower becomes as perfect between the bona fide holder and accommodation makers as if all had been personally present. “ To deal” is “to traffic; to transact business; to trade” (Johnson's Quarto Dict. Deal). And the illustration given by Johnson, [527] supposes that this may be by a third person: “It is generally better to-deal by speech than by letter; and by a man himself than the mediation of a third person” (Bacon). If a firm will commit themselves on notes of this character, it is saying directly to all the world that they are partners; and leading the holder who advances the money to give them credit; and *297 it is this which I take it, forms the reason for actual notice. General dealing with the community is checked by the general newspaper notice of dissolution ; particular dealing, or in other words, a specific credit raised, demands a specific notice. (Collyer on Partnership 311). The makers know that this credit will be raised somewhere. They intend it, and should trace their note at their peril. I am therefore at a loss to perceive why such an act is not dealing both within common parlance and the principle of the rule, which in such case calls for actual notice. In the case at bar. too, there is every reasonable probability that the defendants actually learned where their notes lay. One of the series was protested for non-payment, and lay over for some time. In the ordinary course of business, a demand would have been made by the bank on the defendants. This made a clear case of dealing within Bank of South Carolina v. Humphreys (1 M’Cord, 388).
Then was the notice actual within the rule? That it was so we are referred to Bank of South Carolina v. Humphreys. In that case, however, the bank not only took the paper, but one of their clerks had actually read the notice of dissolution which it contained. The rule from this case and others as stated in the American edition of Collyer, 311, note 115, is too general. The mere taking of the gazette is supposed to be enough, which is clearly going beyond the strongest cases. In Rawley v. Horne (3 Bing. 2) such-taking for three years, with a notice published for the whole term, was held insufficient per se, to qualify the liability of a carrier. The court suggested that a printed notice should be delivered from the office of the carrier to his employers. As to notice of dissolution, the true rule seems to be laid down by Van Ness, J., in Ketchum v. Clark (6 Johns R. 144), where the cases are cited. He says, notice must be specially communicated to per- [528] sons who had previous dealings with the firm: though I admit that if actual notice reach them in any form, it would be equivalent; and of.this there need not be direct evidence. Circumstances, merely, may be so strong as to call for the opinion of the jury, as in Irby v. Vining (2 M’Cord 379). In that case, a notice was posted up over the door at the place of business of the firm, where the plaintiff was frequently in the habit of going to transact business. But I can not allow that the mere taking of a newspaper stuffed with notices, will make a case for the jury. The judgment must be affirmed.
The Chief Justice concurred in the opinion delivered by Mr. Justice Co wen.
Mr. Justice Bronson dissented, and delivered the following opinion;
On the dissolution of a partnership, the usual and proper course is to publish a notice of the fact in a newspaper, at the place where the business of the firm has been transacted, and to send a circular, or in some other way give actual notice of the dissolution, to those with whom the house has had dealings. After notice in fact to dealers, and notice in the gazette as to all others, the power of one partner to bind the other is at an end. Ketchum v. Clark (6 Johns R. 145). Graves v. Merry (6 Cowen 701). Bank of South Carolina v. Humphrey (l M’Cord 388).
The business of the partnership was transacted in the city of New York. William Vernon resided at Newport, Rhode Island. Notice of the dissolution was published in two city papers on the 28tli of February, 1833. On the 15th of April following, the note in question was made by P. H. Vernon one of the members of the late firm. If the defendants had not previously been dealers with the plaintiffs, it is clear that this action can not be maintained. The jury were charged “as matter of law, that, under the facts shown in evidence, the defendants were to be deemed dealers with the plaintiffs.” With great respect for the opinion of the learned judge, that was I think, a question of fact—not of law; and so far was the evidence *298 from being conclusive upon this point, that had the question been submitted to the jury, they would not have been warranted in finding that there had ever been any business transactions whatever between the parties. The plaintiffs attempted to make out their case by proving that, previous to the dissolution, they had discounted several notes of the firm made payable to and endorsed by John A. Moore. The notes were not made payable at the office of the plaintiffs; they were discounted for the benefit of Moore, and he made the payments and took up the notes at maturity. With the exception of the fact that one of the notes was protested for non-payment, there was not a particle of evidence tending to prove that the defendants ever knew the plaintiffs were holders of the paper. Evidence of the protest, without showing under what circumstances it was made, did not authorize any presumption on that subject. The demand of payment may have been made at the defendants’ counting-room in their absence; or if the demand was personal, it was not necessary to its validity that the name of the holder should have been mentioned by the clerk or notary. But if evidence of the protest warranted any inference against the defendants, it was a conclusion of fact to be drawn by the jury, and not a presumption of law to be pronounced by the court.
Nexsen, the discount clerk, says this was an accommodation note. In this remark 1 presume he alluded to the distinction made ‘ by bankers between paper which is to be paid at maturity, and such as is to be renewed from time to time, as the convenience of the person obtaining the discount may require. The one is usually denominated business, and the other accommodation paper. The witness does not profess to know anything of the transactions between the makers and the endorsers of the note; he only speaks of what took place between Moore and the plaintiffs. It seems, however, to have been assumed on the trial, that the witness intended to be understood in a different sense, and that the notes were not made for value, but [530] for the accommodation of Moore. Granting that fact, it can not aid the plaintiffs. If the defendants lent their notes to Moore, that did not constitute him their agent for any purpose whatever. He went into the market, negotiated and raised money on the paper; but he did it for himself not for the defendants. He was a dealer with the plaintiffs—the defendants were not.
The question whether the defendants were bound to pay the notes lent to Moore, while they were partners, is entirely foreign to the inquiry whether they became dealers with every person into whose hands the notes might pass. There was, no doubt, a legal privity between the makers' and every Iona fide holder of the paper. The defendants were bound1 to take-it up, because such was the obligation of their contract. But it can not, I "think, with the least degree of propriety, be said that they became dealers; that they traded or transacted business with the holders. In point of fact, the defendants never had any communication with the plaintiffs on the subject of the notes, and so far as appears, they never knew that the plaintiffs were the holders. If this be such a case of dealing as requires actual notice of dissolution, the hazards of a mercantile, or other pártnership requiring the use of credit, must be great indeed. They can easily give notice to all correspondents of the house; their books will show with whom they have had business transactions; they can ascertain to whom they have negotiated partnership paper, and from whom it has been taken up, but it is impossible, they should be able to trace it into all the hands through which it may have passed. If the rule involved in the decision of the court below is to be regarded as the law of the land, no diligence in giving notice of dissolution can save one partner from the peril of being ruined by the other. We have not been referred to any authority carrying the rule which requires actual *299 notice to dealers, so far as it has been carried in this case, and my own examination enables me to pronounce with some degree of confidence that none can be found. In all the cases which have fallen under my observation, where a newspaper notice has been held insufficient, there had [531] been something more than a legal privity, or a constructive dealing; there had been actual trading or business transactions between the parties. I think the charge'was erroneous, and that the judgment should be reversed.
Judgment affirmed.