Robertson, J. (dissenting.)
Two issues of fact were presented in this case. 1st. The former ownership, by the plaintiffs’ testator, of the bonds bought by the defendant. 2d. Notice from the appearance of such bonds, when bought, sufficient to make the defendant suspect the ownership of the seller.
Dr. Kittredge, a witness for the plaintiffs, who was secretary and treasurer of the company issuing such bonds, testified that only five hundred and twenty-five similar bonds were issued, which he received in blank from Mr. Coe, the mortgagee in trust, with the certificates signed by the latter; the written part of such bonds and their numbering, with that of the coupons, was done by himself and by a Mr. Baldwin, under his immediate supervision. They were numbered consecutively, from one to five hundred and twenty-five; he repeatedly read the numbers on each bond both in the sheet and after they were folded and numbered on the back; the reason why he did so was to be certain that no mistake was made in their numbers. They were read consecutively, beginning at No. 1 and going through the whole series of five hundred and twenty-five ; he made a corresponding memorandum in a pocket book at the time. He further testified there was only one bond of each number ; he canceled two blank bonds by lines across them and destroyed all others printed. He also, stated there were no duplicates of bonds or coupons issued ; he kept all the blank bonds and the seal of the company in his possession; from the care used in counting and numbering such blanks and bonds, no duplicates could have been issued without it having been detected at once. This testimony as to numbering of the bonds, the number issued and the destruction of the remaining blanks, was fully corroborated by other witnesses.
The testimony of Mr. Line, a treasurer of the company, and others, tended to show that after the loss of the bonds by the testator of the plaintiffs, no coupons had been paid or presented corresponding in number with the lost bonds, while duplicates of coupons numbered to correspond with those held by the *550 defendant, had been paid. But it was also established by him that duplicates of three other numbers had been paid; and Mr. Sebring, an employee of the company," testified that some coupons of similar bonds had been paid without any number.
The evidence, therefore, to go to the jury to establish that there were not four bonds issued originally, numbered in duplicate corresponding with «those of the defendant, was quite strong. But there was no evidence offered to show in which of the four produced the numbers had been written by Kittredge or Baldwin> The latter was not examined at all, and neither the former nor any one else was interrogated as to the handwriting of the figures. There was nothing to show whether any thing remarkable in the appearance of the bonds did not exist when they were first numbered. There was no evidence what was the appearance of the duplicate bonds, which were exhibited on the trial to Mr. Ooe, one of the witnesses. The evidence therefore was clearly defective, and could not prove that the bonds held by the defendant were lost by the testator of the plaintiffs, when the evidence was the same against two other bonds. Ueither Kittredge, Baldwin nor any one else, was examined as to the handwriting of the figures in the duplicate coupons paid, which were in Ohio, to show that either of them had been altered. The evidence, therefore, to go to the jury on the question of the ownership of the bonds in question was incomplete.
But even assuming that there was sufficient evidence of the former ownership of the bonds in controversy by the testator of the plaintiffs, it still remains to be determined whether there was enough evidence of something in the appearance of the bonds, when bought by the defendant, to warn him that the seller had not lawfully come by them, and was not the owner. It is conceded that the only thing altered on the face of the bonds were the numbers. The body of the instrument, the signatures and certificate of the trustee, remained untouched. Keither such certificate nor the mortgage, to which it refers, mentions any thing of numbers! They were, therefore, no essential part of the obligation. They seem to have been inserted principally for the benefit of the company, to prevent *551 their paying spurious bonds or coupons or more than they intended and agreed to pay. They were equivalent to devices, or colored inks used in printing promissory notes to prevent counterfeiting. The bonds were legally binding, with or without a number. The company was bound to pay to the true owner, although he erased the number. It. was, therefore, not one of those things which the defendant was bound to examine, to ascertain if the company would be liable, and it was fair to presume he did not do so, rather than deprive him of what he has paid for. In order to charge the defendant, therefore, with notice of any thing so wrong in the number as to induce suspicion of want of ownership, the appearance of the bond where the number is written should be at least such as to induce an ordinary observer to suspect an attempt at concealment or imposition.
The bonds are capable of being transferred by delivery, and are payable to the holder. (Brainard v. Harlem R. R. Co., Ct. of Ap,, N. Y., 1862, December. Same v. Same, N. Y. Supr. Ct., March G. T. 1863. White v. Vermont & Mass. R. R., 21 How. U. S. Rep. 525. Bank of Rome v. Village of Rome, 19 N. Y. Rep. 20. Gould v. Town of Venice, 29 Barb. 452. Delafield v. State of Illinois, 2 Hill, 177. S. C. 8 Paige, 527. Morris Canal and Banking Co. v. Fisher, 3 Am. Law Reg. 423.) The purchase of them in market overt, in the ordinary course of business, without notice of any infirmity in the ownership of the vendor, vests a good title in the purchaser. The only evidence as to the appearance of the bonds, was that of Luce, who testified that one of them had a piece of paper pasted on its back when he examined them, sometime before the trial. He also testified, that on their holding the coupons to the light he discovered the paper to be thin where the numbers were; the ink was bright and a paper was pasted on the back. But he also stated he was not then positive in his views concerning the bonds, when he so examined them, that he did not blame the agent of the company for paying coupons numbered in duplicate even after examining the bonds, and that with the limited knowledge both possessed, he should have paid them himself at the time. The defendant, at the time of the *552 examination, claimed they were duplicated by some clericalerror, to which the witness made no reply, in order to avoid being mixed up'in-the matter, and because hé was not certain him,self as to the fact of the alteration of the numbers. This was strong evidence- to show there was nothing in the appearance of the bonds to awaken the suspicion of the defendant’s agent at the time he bought the bonds, when an intelligent person, who had a suspicion of something being wrong, could find nothing in the ■ appearance of the bonds after a close examination of them, to warn the company or himself that such an alteration had been made as cast doubt upon the ownership.
• The main evidence relied upon by the plaintiffs to prove notice to the defendant’s agent of want of title in his vendor, ho.wever-, was the appearance of the bonds themselves, which their counsel claimed had patches of paper pasted on their back, behind some of the numbers, and were thin and rubbed where- other numbers occurred. Paper pasted on the back of an obligation, could hardly be notice of any thing to a purchaser. He would only be supposed or required to examine the face, and then- only as an ordinary careful observer would, without using-the.utmost vigilance. There is no reason why he should be bound or. supposed to have "held the- instrument to the light in order to. ascertain if there- were any erasures, or if he found theray to ■ suspect a larceny of the bonds on that account. It would -be very rare that in the ordinary course of dealing, such a- scrutiny -would be made, the only examination usually being of. the signatures, the writing or printing of the obligation and its general appearance. Eot a-witness was asked to state what 'there, was in the appearance of the bonds in question, to awaken a- suspicion of any thing wrong, in the minds Of any ordinary observer..-- Luce, the only person -who testified-as to their appearance,, could not satisfy himself that an alteration had been made, after a minute examination, and believed the company justifiable in paying the altered, coupons.
= The true rule in regard to notice is that the circumstances must be such as.not only to lead to, but to direct the course of inquiry, which would, if pursued, end in a discovery of the *553 defect. (Williamson v. Brown, 15 N. Y. Rep. 354.) How could an alteration of a number do this in a bond more than in the case of a hank note ? It might have been altered when it was first issued, or by a prior owner, who had a perfect right to blot it out without impairing the obligation of the bond. Such a change implies neither concealment nor imposition, and does not raise a doubt of ownership. It was not notice of any infirmity of title. It is not enough that something strange or unusual should appear on the face of the instrument; it must be something which affects the contract or its title.
But there was no evidence in the case that the appearance of the bond was different from what it was when issued ; any of the numbers might have originally been written on an erasure. If an inquiry had been made of the officers of the company, they could have given no additional information, except that bonds with such numbers had been issued. There was no other direction given to any inquiry. Possibly Mr. Kittredge or Mr. Baldwin might have informed the purchasers of an alteration, if there was one, but the defendant knew nothing of their agency. The jury could not determine, therefore, by mere inspection that there had been any alteration.
But a mere alteration was not enough, unless done in a manner to attract attention and create a suspicion of concealment. The court was fully as proper a judge to decide whether the .mode of alteration was sufficient prima facie evidence of notice of some infirmity of title to go to the jury, as the latter were to pass upon it. Both merely relied on the evidence of their own senses. No rule of law can permit a jury to find from the mere appearance of an instrument, alone, that it furnishes evidence of having been stolen; otherwise every one could be submitted to a jury on such an allegation. It is for the court first to pass upon the question of relevancy, or else there must be some oral evidence of defects or appearances. But the question in this case was not merely the fact of alteration, but its being done in such a manner as to create suspicion in the mind of an intelligent observer using the attention exercised by a prudent man in his own affairs as to the infirmity of the vendor’s *554 title. We have no evidence before us of the nature of the alteration, except what tends to establish that it was not attractive, glaring or striking, and, therefore, there was no error in refusing to submit the question to the jury.
Upon full reflection and examination, therefore, I feel confirmed in the view that there was not sufficient evidence on which to submit any question of fact to the jury on the trial. The admission of similar evidence to that offered in this case to overthrow the title to a negotiable instrument would.terminate the negotiability of such instruments for all practical purposes. Weighing such evidence by the closest scrutiny after a discovery of a loss and a supposed alteration, is entirely different from the reasonable examination and observation to be practised, when a negotiable instrument is offered for sale, by the vendee. It would be unfair to make the former a standard for the latter, and unless we do so, there is nothing.in this case to sustain the plaintiff’s cause of action.
The newspaper notices and handbills were not brought home to the defendant or his agents. (Vernon v. Manhattan Company, 22 Wend. 182. S. C. 17 Wend. 524, per.Cowen, J.) The police detective was not such an expert as to entitle him to pass upon an alteration not apparent upon bare inspection.
Upon'the whole, I feel satisfied no errors were committed on the trial; the motion for a new trial should be denied, with costs, and the defendant permitted to enter up judgment of dismissal of the complaint, with costs to be adjusted.
Hew trial granted.*

 This decision was afterwards reversed by the Court of Appeals, on appeal. (29 N. Y. R. 220.)