## M. W. POLK *v*. OLIVER, FINNIE & Co.

1. PARTNERSHIP. *Retiring partner. Liability for new firm debts.*

   To escape liability for subsequently contracted debts in the firm name, a retiring partner must give actual notice to existing dealers with the firm, and public notice to the world; in the absence of which public notice he is liable for a debt contracted after his retirement, with a person not before a customer of the firm.

2. SAME. *The notice necessary: How given to subsequent dealers.*

   The character of the notice, to affect subsequent dealers, must be such as to advise the public of the dissolution of the firm, — as, by changing the firm name on the sign and in business transactions, publication in a newspaper, or otherwise, — and a private notice to the former dealers is not alone sufficient to affect subsequent ones; and, generally, whether the proper notice has been given is a question of fact for the jury.

ERROR to the Circuit Court of Tallahatchie County.

Hon. SAMUEL POWELL, Judge.

The case is stated in the opinion of the court.

*Bailey & Bailey* and *Fitz-Gerald & Marshall*, for the plaintiff in error.

The removal to a new location, the absence of Polk from the store in the new business, his protest against using his name, and actual notice to all the customers of the firm, was notice sufficient. But the lower court took the case from the

jury, whose province it was to decide whether the notice was sufficient, by the instructions that nothing short of publication in a newspaper would do. *Lovejoy* v. *Spofford*, 93 U. S. 435; *Dearing* v. *Flanders*, 49 N. H. 228; *Kennedy* v. *Bohanon*, 11 B. Mon. 118. Counsel reviewed 47 N. H. 324; 44 Miss. 283; 17 Pick. 91; *Gear* v. *Huggins*, 12 Bush, 259;     a/
Pars. on Part. 413, and the authorities cited by the opposing counsel.

*J. J. Slack*, for the defendants in error.

The instructions are only that publication of some kind is necessary. Whether sufficient, or not, was a question for the jury, who have decided that it was not sufficient in this case. As to the correctness of the instructions, see Pars. on Part. 427, 434, 436, 437; Pars. on Con. 168; 20 N. Y. 243; 47 N. H. 324; 17 Pick. 91; 44 Miss. 283; 6 Smed. & M. 335; Big. on Estop. 426.

CHALMERS, J., delivered the opinion of the court.

M. W. Polk and J. J. Johnson were partners in the retail liquor business, under the firm name of M. W. Polk & Co., at Harrison Station, Tallahatchie County. By its terms, the partnership was to subsist for twelve months only. Shortly before the expiration of this period, Johnson removed the remnant of the goods and the store-fixtures to Courtland, in Panola County, a distance of five miles, and there continued the business under the same firm style, having obtained a license from the town authorities of Courtland in the name of M. W. Polk & Co., which license he posted in a conspicuous place in the building there occupied by him. A month or more thereafter, Polk, ascertaining that, though the original partnership had expired, Johnson continued to do business under the old style, proceeded to Courtland, remonstrated with him on his conduct, and forbade the further use of his own name.

He gave special notice to each of the old dealers with the firm that his connection with it had ceased; but in no way did he notify the public at large of this fact, nor is it shown that

any body save the old creditors and dealers were in any manner informed of it.

Johnson continued to conduct the business under the name of M. W. Polk & Co., and under that name bought from the appellees the bill of goods the price of which is sought to be recovered in this suit. It is not shown that Polk knew of Johnson's persistence in the use of the old name after he had forbidden its use, and it is shown that the appellees had never been creditors of, or dealers with, the old firm during the proper period of its existence.

Is Polk, under these circumstances, bound for the price of the goods?

Judge Story declares that, while a retiring partner is always bound to give notice of his withdrawal to all the former dealers, there is no such obligation towards those who thereafter become such, and that as to these he owes no duty save that of not misleading them by any act of omission or commission on his part. "Every new creditor or customer is bound," says he, "to inquire who are the parties really interested at the time in the firm, if he would be safe in his dealings and credits with them." Story on Part. (Gray's ed., 1868), sect. 160.

This broad announcement is criticised, and, we think, properly, in Parsons on Partnership, 413, in which it is declared that the true rule is, that to the old customers and dealers there must be given actual notice of the withdrawal, or there must be shown knowledge on their part without notice, or that there were at least adequate means of knowledge; but that, as to those thereafter dealing with the firm, "a retiring partner can exonerate himself from liability by publishing notice of the dissolution, or by showing knowledge of the fact."

The rule thus prescribed is direct notice, or actual knowledge, or means of knowledge, as to former dealers; public notice, or actual knowledge, or means of knowledge, as to new ones; or, to epitomize it still further, direct notice to

former dealers, public notice to subsequent ones.    As thus stated, it is supported by the weight of authority, and meets our approval.

The individual credit of each member of a partnership goes to make up the aggregate credit of the firm.    By openly becoming a partner, each member has advertised the world of his responsibility; and he cannot by a silent withdrawal protect himself, either from those who have heretofore or those who may hereafter deal with the firm to which he has given credit by his connection with it.    Having no notice, either public or private, of the changed condition of things, all men will have a right to suppose that there has been no change, and to believe that he who once openly held himself out as liable continues to be so.    Where, therefore, he elects to withdraw, notice of the fact in some way should be given; and the manner of notice must partake, in some degree, of the publicity of the previous connection.    To those who have actually dealt with him as a partner there should be direct notice, or its equivalent.    To the world at large, who by reason of the notoriety of his former connection have known, or may have known, of that connection, there must be open, public, and general information given that it has ceased.    How shall this be done?    It may always be done by publication in the newspapers; and this, therefore, will be the safest method.    There are many authorities, indeed, which hold a newspaper publication to be essential; and such may be the law in England, where there is an official gazette for the publication of bankrupt and other notices appertaining to mercantile affairs, but, obviously, there can be no such requirement here, where there are many small communities destitute of newspapers or printing-presses.

It will be sufficient, therefore, if in any way the public have been advised of the dissolution, and whether they have been must be mainly a question of fact.    Upon this issue of fact, evidence may be introduced showing any and all the means which have been taken to acquaint the community with the

changed condition of affairs. Any means will be appropriate, says the Supreme Court of the United States, in a recent ably considered case, which "are fair means, to publish as widely as possible the fact of dissolution; * * * or which are public and notorious, to 'put the public on its guard; * * * or notice by advertisement, or otherwise, — as, by withdrawing the exterior indications of partnership, and giving public notice in the manner usual in the community where he resides." *Lovejoy* v. *Spofford*, 93 U. S. 430–440.

It is quite evident that plaintiff in error, Polk, in the case at bar, resorted to none of the steps here indicated. When made aware that his former partner was still using the firm name, he contented himself with a private admonition to him, and private notices to the former creditors of the firm, leaving the world at large wholly ignorant of his own withdrawal, or of the fact that any future use of his name would be unauthorized. Under such circumstances, he is clearly liable to appellees, who, in their subsequent dealings with Johnson, had a right to believe that in extending credit to M. W. Polk & Co. they were protected by the liability both of Polk and of Johnson. But it is said that the verdict and judgment should be reversed because the court erroneously instructed the jury that it was the duty of the retiring partner to have given notice of the dissolution in the newspapers. We do not so understand the instructions. In the first one the words used are, " gave actual notice, or made the usual publication of the dissolution." In the second the words are, " gave actual notice to Oliver, Finnie & Co., or public notice of the dissolution." In the third the words are, " did not make publication." None of these expressions necessarily imply a newspaper publication. Indeed, the court seems to have carefully avoided any direct reference to a newspaper, perhaps because there was none printed in the community.

All the phrases used are quite compatible with the language of the Supreme Court of the United State, *supra*, when it speaks of " giving public notice in the manner usual in the

community where he resides." The word "publication" simply means "making public;" and, while entirely appropriate to advertisements in newspapers, it is equally so to any other method of making a fact public.  When, therefore, the instruction uses the words, "made the usual publication of the dissolution," we must understand it as meaning the usual method, in that community, of making the fact public.

Affirmed.