## PRESTON v. FOELLINGER.

*(Circuit Court, D. Indiana.    August 4, 1885.)*

SALE OF BUSINESS—NOTICE—LIABILITY FOR GOODS SOLD.

J. F. had for many years been engaged in business in Fort Wayne, Indiana, and in August, 1880, he sold out to the wife of his son, who bore the same name as himself, and she transferred the stock to her husband, who published in two papers in Fort Wayne the fact that he had purchased the business.    He continued to use the old letter-heads in his correspondence, kept the old signs up, and carried on the store in the name of J. F., as theretofore.    In November, 1880, T., a commercial traveler in the employ of plaintiff, who was acquainted with J. F., (the father,) went into the store and sold a bill of goods to the son,—the father being present,—and these and other goods ordered by letter were duly delivered.    Neither T. nor plaintiff knew of the transfer of the business at the time of these sales, and subsequently the son failed, whereupon suit was brought against the father.    *Held*, no fraud or intention to deceive being shown, that the father was not responsible.

At Law.

*U. J. Hammond* and *Harris & Calkins*, for plaintiffs.

*R. S. Taylor* and *Ninde & Ellison*, for defendant.

WOODS, J.    The defendant for many years carried on a mercantile business in Fort Wayne, Indiana, under the name of "J. Foellinger." He owned the building in which the store was kept, and his name was upon the building.    A sign bearing the name "J. Foellinger" was over the door, and also a street-sign in front.    He used a letter-head as follows:

"'The Pioneer,' established 1840.    Office of J. Foellinger, manufacturer of boots, and dealer in boots and shoes, No. 36 Calhoun st., Ft. Wayne, Ind."

He was of well-known financial ability.    He had a son of the same name who had lived in Michigan for many years, and in the year 1879 came to Fort Wayne and entered his father's store as a clerk The plaintiff was a wholesale merchant in Chicago, and had in his employ one Tyler, who resided in that city.    Tyler had known the defendant for five years, and the plaintiff for about three years, and in November, 1880, was in the latter's employ as a commercial traveler.    On August 26, 1880, the defendant sold the store to the wife of his said son, who a few weeks thereafter transferred the stock to her husband, who was a man without any means.

On August 28, 1880, there was printed, in an evening newspaper of general circulation in Fort Wayne, the following:

"Jacob Foellinger, Jr., has purchased the stock of boots and shoes of J. Foellinger, Sr., No. 36 Calhoun street, and will be pleased to greet his old friends and many new ones."

About the same time, a local notice was printed in a German newspaper, as matter of news, stating in German that the son had purchased his father's stock and would continue the business. No other published notice was given. The old signs remained over and in front of the door. The son used the same letter-heads and carried on the business in the name of J. Foellinger until he failed, in January, 1881. In November, 1880, Tyler went into the store and received an order upon the plaintiff for goods. The defendant was in the store at the time. Neither Tyler nor Preston had any knowledge of the transfer or sale by the defendant of his business until the failure. The son gave the order, and in answer to an inquiry made by Tyler for the style of the house, answered, "Jacob Foellinger." Upon the order being sent to the plaintiff, it was filled; and afterwards, during that month and the following, orders for additional goods were received under said letter-heads, signed "J. Foellinger," which were filled from time to time. These orders, as received, were, in the course of business and book-keeping in plaintiff's establishment, entered first upon an order-book, and carried from that to a sales-book, and from that to the journal, and finally from that to the ledger. These entries were made in the name "J. Foellinger," except upon the ledger, where it was written, "J. Foellinger, Sr." How this came to be so done the plaintiff's book-keeper was unable to explain, but his cashier and credit clerk, Mr. Wallace, testified on this point as follows: "It has always been my instruction to open accounts in the ledger, being sure that they are opened with parties that are responsible, and we found that out by reference to the book of R. G. Dun & Co. There we found 'J. Foellinger, Sr.'" The testimony of this witness also shows that it was not known to him or to the plaintiff that there were two of the name of Jacob Foellinger until after the claims in suit had become due, and steps taken for their collection.

Counsel for the plaintiff claim that the rules of law which govern the liability of retired partners apply to this case. Conceding, without deciding, the law of the case to be as claimed, the judgment of the court is that the defendant's liability to the plaintiff is not established. The goods were not in fact sold to defendant, but to another of the same name, who had succeeded to the business, of which due and ample public notice had been given at Fort Wayne, where the business had been conducted. *Young* v. *Tibbitts*, 32 Wis. 79; *Holtgreve* v. *Wintkner*, 85 Ill. 472; *Haynes* v. *Carter*, 12 Heisk. 7; S. C. 27 Amer. Rep. 747. The plaintiff had never dealt with nor known of the defendant or his business, and therefore could not have relied on, and, indeed, did not rely upon, his reputed responsibility. He was not misled by old signs and letter-heads, because he knew nothing of their past significance. His salesman who took the first order for goods had knowledge, it

seems, that the defendant had owned and conducted the business, and when he took the order perhaps believed him to be still in charge; but how and when he obtained that knowledge is not shown; it is, perhaps, not material to know.    As agent for the plaintiff, who had had no previous dealings with the defendant, and, even if acting for himself, having had no former transactions, if not absolutely bound by the public notices given in the community of the change of ownership of the business, he was at least bound to know the person with whom he dealt, and, if he desired to bind another, to make proper inquiry to that end.    As a rule that inquiry should be made of the person sought to be bound, and in this instance this was especially obligatory, because the defendant was at the time near by.    But, negligent of this plain and unequivocal course, the salesman, according to his own testimony, inquired simply for the style of the house; showing that he was not acting upon the faith of the old signs about the door and elsewhere, which, so far as appears, he had not observed.

But, aside from these considerations, it seems, according to the decision of the Indiana supreme court in the case of *Richardson* v. *Snider*, 72 Ind. 425, that the knowledge possessed by plaintiff's salesman in respect to the defendant's former connection with the business, not having been obtained while acting in that agency, cannot avail the plaintiff.    That decision is upon a case where the firm name remained unchanged though two of the partners had gone out, and it was held that the retiring members were in duty bound to give actual notice only to those with whom the firm had dealt, and that this included principals only, and not clerks, salesmen, or agents.    On the general subject of retired partners' liability, see *Uhl* v. *Harvey*, 78 Ind. 26; *Backus* v. *Taylor*, 84 Ind. 503; *Lovejoy* v. *Spafford*, 93 U. S. 438; *Thompson* v. *First Nat. Bank*, 111 U. S. 529; S. C. 4 Sup. Ct. Rep. 689.    It is, of course, not to be questioned that if the defendant intended the continued use of his name, either for the purpose of lending his credit, or for the purpose of enabling his son to practice deceit in this respect, he ought to be held responsible upon all liabilities incurred.    *Speer* v. *Bishop*, 24 Ohio St. 598; *Elverson* v. *Leeds*, 97 Ind. 336.    There was no such intention in this case; and the only plausible ground for imputing misconduct or bad faith to the defendant is the continued use of the old signs and stationery.    But this, in itself, was certainly not wrong, and the notice of the change which was immediately published excludes any reasonable inference of a wrongful purpose.    The names being the same, there is no more reason why the son should not use the signs and letter-heads left by the father than others obtained upon his own order; proper precautions being taken, as was done, to prevent deception.    As used by him, the name on the signs and letter-heads meant and were intended to mean the son, not the father, and this new customers were bound to know, unless misled by act of the defendant.    If the defendant had died, there could be no doubt on the point, and yet the possi-

bility of deceit and fraud by the son upon parties ignorant of the death would have been the same. The question in every such case, as I suppose, is one of actual misleading or deception; and in respect to the case presented it is enough that the plaintiff did not in fact sell his goods to the defendant, and cannot say that he was misled by any act of the defendant into a belief that the defendant was the purchaser.

Finding and judgment for defendant.

---

When a partnership is dissolved, or a known member retires from the firm, until such dissolution or retirement is duly notified, the power of each to bind the rest continues in full force, although as between the partners themselves a dissolution or retirement is a revocation of the authority of each to act for the others.[1]

After dissolution and notice the power of each partner to bind the others ceases.[2]

It is of course assumed, in what has been above written, that, after a firm is dissolved, one partner dealing with a person who has no notice of the dissolution may bind his copartners only in transactions in the usual course of business.[3]

Where a change takes place in a firm by the retirement of some of its members, and the same firm name is used after such retirement, the retiring members can only relieve themselves from liability for the future transactions of the firm by giving actual notice of such retirement to former customers who continue to deal with the firm. As to these, the old partnership is presumed to continue the same as it was when they commenced to deal with it, until in some way they have actual notice of the change.[4]

It makes no difference how notice is given, so that actual notice of a change in the firm is brought home to the former correspondents.[5] Notice of the

[1] Mulford v. Griffin, 1 Fost. & F. 145; Faldo v. Griffin, Id. 147; Parkin v. Carruthers, 3 Esp. 248; Williams v. Keats, 2 Stark. 290; Brown v. Leonard, 2 Chit. 120; Dolman v. Orchard, 2 Car. & P. 104; Tabb v. Gist, 1 Brock. 33; Bradley v. Camp, Kirby, 77; Southwick v. McGovern, 28 Iowa, 533; Kennedy v. Bohannon, 11 B. Mon. 118; Amidown v. Osgood, 24 Vt. 278; Lamb v. Singleton, 2 Brev. 490; Heroy v. Van Pelt, 4 Bosw. 60; Howell v. Adams, 68 N. Y. 314; Schorten v. Davis, 21 La. Ann. 173; Dickinson v. Dickinson, 25 Grat. 321; Southern v. Grim, 67 Ill. 106; Buffalo City Bank v. Howard, 35 N. Y. 500; Hunt v. Hall, 8 Ind. 215; Newcomet v. Brotzman, 69 Pa. St. 185; Price v. Towsey, 3 Litt. 423; Merritt v. Pollys, 16 B. Mon. 355; Ketcham v. Clark, 6 Johns. 144; Grady v. Robinson, 28 Ala. 289; Spears v. Toland, 1 A. K. Marsh. 203; Thurston v. Perkins, 7 Mo. 29; Princeton, etc., T. Co. v. Gulick, 16 N. J. Law 161; Bernard v. Torrance, 5 Gill & J. 383; 1 Lindl. Partn. *406. See, however, Brisban v. Boyd, 4 Paige, 17.

[2] See Cronly v. Bank of Ky. 18 B. Mon. 405; Whitesides v. Lee, 1 Scam. 548; Lane v. Tyler, 49 Me. 252; and the cases cited in note (1.)

[3] Whitman v. Leonard, 3 Pick. 177.

[4] Lindl. Partn. *415; Graham v. Hope, Peake, (N P.) 154; Page v. Brant, 18 Ill. 37; Holtgreve v. Wintker, 85 Ill. 470; Stall v. Cassady, 57 Ind. 284; Tudor v. White, 27 Tex. 584; Davis v. Willis, 47 Tex. 154; Dickinson v. Dickinson, 25 Grat. 321; Little v. Clarke, 36 Pa. St. 114; Kenney v. Altvater, 77 Pa. St. 34; Carmichael v. Greer, 55 Ga. 116; Holland v. Long, 57 Ga. 36; Ennis v. Williams, 30 Ga. 691; Stewart v. Sonneborn, 51 Ala. 126; Shamburg v. Ruggles, 83 Pa. St. 148; Vernon v. Manhattan Co. 17 Wend. 524; Austin v. Holland, 69 N. Y. 571; Bank of Com. v. Mudgett, 44 N. Y. 514; Polk v. Oliver, 56 Miss. 566; Lowe v. Penny, 7 La. Ann. 356; Denman v. Dosson, 19 La. Ann. 9; Pope v. Risley, 23 Mo. 185; Johnson v. Totten, 3 Cal. 343; Williams v. Bowers, 15 Cal. 321; Deering v. Flanders, 49 N. H. 225; Zollar v. Janvrin, 47 N. H. 321; Scheiffelin v. Stevens, 1 Winst. Law, (N. C.) 106; White v. Murphy, 3 Rich. Law, 369; Hutchins v. Hudson, 8 Humph. 426; Kirkman v. Snodgrass, 3 Head, 370; Prentiss v. Sinclair, 5 Vt. 149.

[5] Holtgreve v. Wintker, 85 Ill. 471.

dissolution may be shown either by direct or circumstantial evidence sufficient to establish the fact that the person seeking to enforce the partnership liability knew of the dissolution.[1] Circumstances such as leave no rational doubt in the mind that one knew of the dissolution are as satisfactory as direct and positive proof.[2] Evidence of mere notoriety of the dissolution alone is not, however, admissible to prove such notice.[3] Knowledge of any facts, however acquired, sufficient to put an ordinarily prudent man upon inquiry will charge one knowing such facts with notice of whatever other facts a reasonable investigation would have disclosed.[4]

Persons having no knowledge of a partnership are not entitled to notice of its dissolution;[5] and, as to all persons who have not had dealings with the firm, notice of the dissolution by publication in some newspaper of general circulation is sufficient, whether such notice is seen by the parties to be charged therewith or not.[6]

When, however, a partner retires, and gives notice of his retirement, but nevertheless allows his name to be used as if he were still a partner, he will continue to incur the liability of a partner.[7] The mere fact, however, that a partnership name has been kept over the door after the dissolution of the firm, it is held, is not alone sufficient to warrant a recovery upon a note signed in the firm name;[8] and simple forbearance, after notice of retirement given by advertisement, to prevent the use of the name of the retiring partner, does not, as it seems, necessarily amount to an authority to use the name of the retiring partner as before; and unless his name is used by his authority he is not liable on the ground that he holds himself out as a partner.[9]

Tested by the foregoing rules, there would seem to be no reasonable doubt of the correctness of the decision of the principal case; for it distinctly appears that the plaintiff had had no previous dealings with, nor even knew of, the defendant or his business; and the person buying the goods simply used his own name, as he had a right to do.                          M. D. EWELL.

*Chicago, September 1, 1885.*

[1] See Laird v. Ivens, 45 Tex. 622; Lovejoy v. Spafford, 93 U. S. 430; Coddington v. Hunt, 6 Hill, 595; Mauldin v. Branch Bank, 2 Ala. 502.

[2] Irby v. Vining, 2 McCord, 379.

[3] Pitcher v. Barrows, 17 Pick. 361.

[4] See Young v. Tibbitts, 32 Wis. 79; Ransom v. Loyless, 49 Ga. 471.

[5] Chamberlain v. Dow, 10 Mich. 319.

[6] Lindl. Partn. *415; Godfrey v. Turnbull, 1 Esp. 371; Wrightson v. Pullan, 1 Starkie, 375; Godfrey v. Macauley, 1 Peake, (N. P.) 209; Newsome v. Coles, 2 Camp. 617; Shurlds v. Tilson, 2 McLean, 458; Watkinson v. Bank of Pa. 4 Whart. 482; Galliott v. Planters' Bank, 1 McMul. 209; Mauldin v. Branch Bank, 2 Ala. 502;

Lucas v. Bank of Darien, 2 Stew. 280; Lansing v. Gaine, 2 Johns. 300; Prentiss v. Sinclair, 5 Vt. 149; Graves v. Merry, 6 Cow. 701; Polk v. Oliver, 56 Miss. 566; Simonds v. Strong, 24 Vt. 642; Martin v. Searles, 28 Conn. 43; Martin v. Walton, 1 McCord, 16.

[7] Lindl. Partn. *410; Williams v. Keats, 2 Starkie, 290; Dolman v. Orchard, 2 Car. & P. 104; Emmet v. Butler, 7 Taunt. 600; Brown v. Leonard, 2 Chit. 120; Freeman v. Falconer, 44 N. Y. Sup. Ct. (12 Jones & Sp.) 132; Wait v. Brewster, 31 Vt. 516.

[8] Boyd v. McCann, 10 Md. 118.

[9] See Lindl. Partn. *410; Newsome v. Coles, 2 Camp. 617.