THOMPSON et al. v. HARMON.

(Court of Civil Appeals of Texas. Texarkana. Dec. 27, 1912. Rehearing Denied Jan. 16, 1913.)

1. PARTNERSHIP (§ 242*) — RETIREMENT OF PARTNERS—NOTICE.

In an action against retiring partners in a private bank, evidence *held* to sustain a finding that such partners gave no notice to the bank's customers of their retirement.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 500–508, 663; Dec. Dig. § 242.*]

2. APPEAL AND ERROR (§ 80*)—FINALITY OF JUDGMENT—CROSS-BILL.

A judgment is final, though there is a cross-bill undisposed of, where the cross-bill is abandoned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 429, 432, 433, 450, 456, 457, 494–509; Dec. Dig. § 80.*]

3. APPEAL AND ERROR (§ 916*) — PRESUMPTIONS—ABANDONMENT OF CROSS-BILL.

Where a cross-bill is filed to bring in new parties which seeks no relief against the plaintiff, and a motion to continue is sought to enable the petitioner to bring in such parties which is denied, and such parties were not brought in at the time of trial, it will be presumed that the cross-bill was abandoned.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3699–3705; Dec. Dig. § 916.*]

4. PARTNERSHIP (§ 241*) — RETIRING PARTNERS—LIABILITY—NOTICE.

Retiring partners, who gave no notice by a publication or otherwise of the retirement, render themselves liable for obligations thereafter incurred in the prosecution of the partnership business, unless the parties dealing with the partnership had actual or constructive notice of the retirement.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 479½, 480, 651, 652, 654, 657, 659, 665; Dec. Dig. § 241.*]

5. PARTNERSHIP (§ 242*)—NOTICE OF RETIREMENT—BURDEN OF PROOF.

The burden to prove notice of dissolution of a firm is on the retiring partners.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 500–508, 663; Dec. Dig. § 242.*]

6. PARTNERSHIP (§ 242*)—RETIRING PARTNERS—LIABILITY—EVIDENCE.

Evidence *held* sufficient to sustain a finding that depositors in a partnership bank made their deposits on the strength of the belief that the partnership was composed of the same persons who originated it.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 500–508, 663; Dec. Dig. § 242.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**7. HUSBAND AND WIFE (§ 25\*)—NOTICE TO HUSBAND AS NOTICE TO WIFE.**

Where a husband had knowledge of the dissolution of a partnership, his wife would also be charged with notice.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 148–151, 153, 154; Dec. Dig. § 25.\*]

**8. APPEAL AND ERROR (§ 1002\*)—CONCLUSIVENESS OF VERDICT.**

Where there is evidence which would enable the jury to find either way on an issue, the finding will not be disturbed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.\*]

Hodges, J., dissenting in part.

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by M. H. Harmon against W. R. Thompson and another. From a judgment for plaintiff, defendants appeal. Reformed and affirmed.

Sidney L. Samuels, Geo. Thompson, and Theodore Mack, all of Ft. Worth, for appellants. W. P. McLean and R. L. Carlock, both of Ft. Worth, for appellee.

LEVY, J. On December 23, 1905, W. R. Thompson, W. A. Green, and J. Z. Carter entered into a written contract to organize and operate a bank at Newark, Tex., as a private partnership; all of the partners being equal, and Green to be cashier and have immediate charge and be the active manager of the bank. These parties began business at Newark on March 1, 1906, in the name of the Citizens' Bank of Newark, Unincorporated, with W. R. Thompson president, J. Z. Carter vice president, and W. A. Green cashier. W. R. Thompson prior to the organization of the bank visited Newark and talked to a number of citizens, informing them of the contemplated organization of the bank and of his connection therewith, and desiring them to give to the bank their business. The following circular letter, known to each partner, was mailed out broadcast throughout the community of Newark: "W. R. Thompson, President. J. Z. Carter, Vice President. W. A. Green, Cashier. The Citizens' Bank (Unincorporated). Newark, Texas, March 1, 1906. Dear Sir: We desire to announce that the Citizens' Bank of Newark, Texas, opened for business Thursday, March 1, 1906. The individual responsibility of the bank is over one hundred thousand dollars, giving us ample capital to conduct an up-to-date banking business. We have spared no pains in our equipment, which is first class in every respect, and consists of a substantial new brick building, elegant vault, fire and burglar proof safe. Our customers will be protected against loss by a full line of burglar insurance. We solicit the business of Newark and surrounding territory, with the assurance that every courtesy consistent with good sound banking principles will be extended to our patrons. Call in to see us when in Newark. Very truly, The Citizens' Bank, W. A. Green, Cashier." These letters were received by numerous members of the community, and gave general publicity to the bank and its partners in that community. W. R. Thompson was the strong financial member of the firm. He at that time was interested in two or three other banks, and had been for several years. He was a physician in Ft. Worth, where he had practiced for many years and enjoyed a lucrative practice. He admitted on the trial that he was worth at the time the bank was organized between $50,000 and $75,000. J. Z. Carter was cashier of a private bank in Paradise, 12 or 15 miles from Newark, and was worth from $5,000 to $6,000. Green, it appears, was a man of small means. W. R. Thompson's reputation for solvency and financial responsibility was well known in the Newark community; several of the patrons of the bank understanding, it appears, that his wealth amounted to above $100,000. The stationery used by the bank from its beginning was the same as that used in the circular letter. The notices sent out with regard to collection of notes, and other stationery used by the bank, all carried the superscription: "Citizens' Bank of Newark, Unincorporated. W. R. Thompson, President. J. Z. Carter, Vice President. W. A. Green, Cashier." W. A. Green was in active charge of the bank and was invested with its whole control and management, so far as the community at large had dealings with the bank. A lot was purchased in Newark and a deed made thereto to the partnership, and a substantial building was erected on the lot. As a matter of fact, it appears only a thousand dollars apiece had been put into the bank by each of the partners.

In October, 1907, during the severe financial panic at that time prevailing generally, it appears that an arrangement was made between W. R. Thompson and J. Z. Carter and W. A. Green whereby Thompson and Carter sold out their interest in the banking business to W. A. Green. The appellee contended that this sale was simply a collusive or pretended sale of the partnership, and was not one made in good faith. The appellants claim that the sale was a bona fide sale. In view of the verdict of the jury there is involved a finding on this question in favor of the appellants, and it becomes unnecessary for the purposes of this appeal to set out the testimony on this phase of the case. The bank continued to do business from the date of the alleged sale by the two partners until January 13, 1911, when it finally suspended business, in the same name and in the same bank building and with W. A. Green as cashier in active charge and management of the same. The same stationery was used without change during the entire period, carrying the

names of W. R. Thompson, president, J. Z. Carter, vice president, and W. A. Green, cashier, at the top of each letter head and business notice. It was used freely and at all times in carrying on business of the bank. No notice of any kind was given by either Thompson, or Carter, or Green, of the asserted dissolution of the partnership, to any customer or depositor of the bank, or to any member of the business community in Newark. Newark is a town of 200 or 300 people, and had some 5 or 6 stores, and was about 18 miles distant from Ft. Worth. After the alleged dissolution Carter was in Newark a number of times. It does appear that W. R. Thompson was not in Newark after the dissolution. The only change ever made about the bank was by adding a glass sign in front reading: "Citizens' Bank. Deposits Guaranteed." W. R. Thompson admitted that he did not give any notice to the people at Newark that he and Carter had sold out their interest. His testimony was: "I did not give any notice to the people at Newark that were doing business with this bank that Carter and I had sold out. I did not post any notice on the door of the bank saying that we had disposed of our interest in it and Green was the sole owner. I did not advertise in any newspaper that Carter and I had parted with our interest in that bank. I did not write a single customer a single letter or postal card advising them of that fact. I did not consider it necessary. I depended upon Green most implicitly, and relied upon him. I did not take any steps whatever to get on the train and go to that community and tell the people there that Thompson and Carter had severed their connection with the bank. I did not invest in a postage stamp to that effect. I did not know that the community up there had put their money in the bank largely upon the faith of my being behind the bank. I supposed that had influenced them. I was the responsible man of the three men. They were not as responsible as I was." It was shown that the general opinion prevailed in the community of Newark that W. R. Thompson was a member of the bank, as was also Carter, up to the date of its suspension. At the time the bank closed its doors in January, 1911, it owed 149 depositors an aggregate of $20,008.47. These depositors assigned their claims to appellee, Harmon, himself a depositor.

Acting for the bank in the ordinary course of its business, W. A. Green assumed in September, 1908, the Oatis vendor's lien note sued on.

[1] The evidence sustains the finding of the jury, as involved in their verdict, that W. R. Thompson and J. Z. Carter failed to give any notice, to those who had previously dealt with the bank partnership, of the alleged dissolution; that they did not give any publicity of their withdrawal to the public; and that W. A. Green continued to run the business under the name of the Citizens' Bank of Newark, and held out to the public that Thompson and Carter were still partners in the business; that Carter actually knew, and Thompson could have reasonably known by reason of the publicity of the acts of Green, that Green was holding them out to the public as partners in the business; that Thompson and Carter did not take any steps to stop such conduct; and that the creditors of the bank in placing their money in the keeping of the bank and in permitting it to remain therein did so in reliance upon the universal belief that Thompson and Carter were members of the firm and that there had not been any change in the firm. The evidence authorizes the finding that the bank expressly assumed to pay the vendor's lien note of Oatis according to its terms.

Claiming that he and those under whom he claims were depositors in the bank upon the faith and belief and in reliance that appellants were members of the firm, appellee sues the appellants, both individually and as surviving members of a partnership. The trial was to a jury, and in accordance with their verdict judgment was entered in favor of appellee.

[2, 3] Appellants first contend that the appeal is from a judgment lacking the essential elements of finality and should be dismissed, for that the appellants' cross-bill against Duke as temporary administrator was not disposed of in the judgment. We do not think that it could be said from the cross-bill appearing in the record that any relief was sought by appellants against Duke as temporary administrator eo nomine, or the estate under temporary administration, for it sought only to implead the wife and child of W. A. Green, deceased, and the permanent administrator whenever one should be appointed; it expressly denied the right of the temporary administrator to represent the estate of Green in the matter there pleaded. Before trial appellants moved for a continuance of the case in order to bring in the surviving wife and child and permanent administrator. In view of the fact that the pleading mentioned disclaimed suing the temporary administrator, and in view of the further fact that the court overruled the application to continue to make parties to the cross-action, and such parties sued not being made parties by service or answer at the time of the trial of the main case, it must be assumed that prosecution of the cross-bill was abandoned. The several assignments presenting the question are overruled.

[4, 5] Assignments 20 to 26, inclusive, predicate error upon the following portion of the second paragraph of the court's charge: "If Thompson and Carter did dissolve said partnership with the said Green, as claimed by them, it was their duty under the law to have given actual notice of such dissolution to those having had prior dealings with said partnership, and in addition thereto to

have given notice by publication or in some other manner reasonably sufficient to notify the public in said community of the change in the membership of said firm, and a failure on the part of the said defendants to do so would render them liable for the obligations thereafter incurred in the further prosecution of said business by the said Green, unless the parties who dealt with the said Green thereafter either knew of the said dissolution, if any had occurred, or had constructive notice thereof, as that term is hereinafter defined." The record admits that while appellants, who were active and known members of the valid partnership doing a private banking business, terminated their connection with the firm by private sale in October, 1907, to Green, the remaining partner, the banking business was continued from that date until its suspension in January, 1911, in the same building, with W. A. Green, cashier, in active charge and management of the same, freely using the printed letter heads and notices of the former personnel of the bank to carry on the banking business, and contracting obligations and receiving deposits in the firm name of the Citizens' Bank of Newark, Unincorporated. Of the creditors here suing some had dealings with the partnership during its existence and thereafter continued such dealings in the name used by the firm, and the dealings of the remaining creditors originated after the alleged dissolution and in the name used by the firm; but none of such creditors appear to have known or had any notice of any change in the membership of the firm. It is a further admitted fact in the record that no notice of any kind was given, or attempted to be given, by appellants, or by Green, of the dissolution of the firm, to any customer or depositor, or any degree of publicity undertaken to be given to inform the business community in Newark or elsewhere who might thereafter have dealings with the bank upon faith and credit of the firm, of the dissolution. At the organization of the bank a circular letter was mailed broadcast throughout the community, and known to each member of the partnership, advising the people of the personnel of the bank, soliciting their business, and explaining that there was an individual responsibility behind the bank of over a hundred thousand dollars; and the general opinion prevailed in the community, till the date of the final suspension of the bank, that appellants were members of the firm and were the men of financial worth in the partnership. It is believed that the part of the charge involved in the assignments states understandingly to the jury, and with substantial accuracy, the principles of law applicable to the facts in the case. It being a proven fact here that two of the three active and known members of a valid partnership undertook to terminate their connection with the firm by private sale to the remaining partner, and the remaining former partner continuing without change the same business, at the same place, in the same name used by the firm, there devolved upon such retiring partners the duty of showing, in order to avoid the liability that would attach to themselves by operation of law for future obligations incurred by the former partner, Green, in the usual course of business with third persons in the name and upon the faith of the partnership, to give notice of the dissolution of the firm. Tudor v. White, 27 Tex. 584; Long v. Garnett, 59 Tex. 229; Green v. Bank, 78 Tex. 2, 14 S. W. 253; Bank v. Bergstrom, 1 Tex. Civ. App. 151, 20 S. W. 836; White v. Hudson, 36 S. W. 332; Gilbough v. Building Co., 16 Tex. Civ. App. 448, 41 S. W. 535; Benjamin v. Covert, 47 Wis. 375, 2 N. W. 625; Arnold v. Hart, 176 Ill. 442, 52 N. E. 936; Morrill v. Bissell, 99 Mich. 409, 58 N. W. 324; 30 Cyc. 675.

Until due notice of dissolution of the partnership shown to exist and generally known to exist has been shown, there does not appear any knowledge on the part of third persons dealing in the firm name and upon the faith of the partnership of the withdrawal of any of the members, and from the lack of this essential requirement of knowledge on the part of third persons of the withdrawal it will be considered that the implied power of every partner to bind the others still exists, as to third parties, as to obligations incurred and dealings had by the remaining partner in the usual course of the business in the firm name. 30 Cyc. 670. See Presumption of Continuance of Facts, 1 Greenleaf, § 42; 1 Rice on Evidence, § 42. The principle is in accordance with the rule ordinarily applied to principal and agent—that a principal on revoking an agency must give notice thereof to make the revocation effective as to third persons. 1 Clark & Skyles on Agency, § 173. The rights of the parties are in effect measured by the underlying principle that, if one of two innocent parties must suffer, the loss must be borne by him whose acts contributed to bring about the state of things which caused the loss. Those who have had dealings with and given credit to the partnership during its existence are entitled to have personal or actual notice of its dissolution, and the burden of proving this is on the retiring partner. Davis v. Willis, 47 Tex. 154; Laird v. Ivens, 45 Tex. 621; Sibley v. Parsons, 93 Mich. 538, 53 N. W. 786; Sinclair v. Hollister, 14 Misc. Rep. 607, 36 N. Y. Supp. 460; 38 Century Digest "Partnership," § 653, for full authorities. And public notice in some reasonable and sufficient manner must be given in order to conclude all persons who might thereafter have dealings in the name of the firm and upon the faith of the known partnership. Lucas v. Bank, 2 Stew. (Ala.) 280; Solomon v. Hollander, 55 Mich. 256, 21

N. W. 336; Ellison et al. v. Sexton, 105 N. C. 356, 11 S. E. 180, 18 Am. St. Rep. 907; Polk v. Oliver, 56 Miss. 568. The latter portion of this instruction, it is to be observed, made recovery by a creditor dependent upon a want of notice, either actual or constructive, of the withdrawal of appellants from the firm. We deem it unnecessary to here further discuss the objections, and the assignments are overruled.

[6] The thirty-first and thirty-second assignments present the point that as to the claims of the depositors, except 9, there was no testimony offered to show that such deposits were made in the bank by reason of any faith or belief that appellants were still partners in the business, and therefore the verdict was unsupported by the evidence and contrary to the law. There were before the jury sufficient facts and circumstances, we think, to warrant them in finding that the customers of the bank in depositing their money there did so on the strength of the belief that the partnership was the same that it had been publicly and generally represented and proclaimed to be during its actual existence; and the assignments are overruled.

[7, 8] The thirty-third assignment predicates error upon the allowance of the claim of R. A. Hudson and Mrs. Green, wife of the cashier. There was evidence authorizing the jury to find either way—that Hudson had, or did not have, notice of the dissolution—and we would not be authorized to disturb the jury finding. By reason of her husband's knowledge of the dissolution, Mrs. Green, as a matter of law, would be charged with notice, and she cannot recover on her community claim, and the same must be disallowed.

We have considered all the other assignments, and are of opinion that they do not furnish a ground requiring the reversal of the judgment.

The judgment will be so reformed as to disallow recovery on the claim of Mrs. Green, and as so reformed will be affirmed, with costs of appeal taxed against appellee.

HODGES, J., does not incline to concur in the overruling of assignments 20 to 26, and assignments 31 and 32.